**Howard M. WEISER and Lenore H. Weiser, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Nos. C–89–3027 RFP, C–89–3028 RFP, C–89–3029 RFP and C–89–3035 RFP.**

United States District Court, N.D. California.

Aug. 27, 1990.

Peter T. Chamberlin, Walnut Creek, Cal., for plaintiffs.

Erik P. Doerring, Asst. U.S. Atty., San Francisco, Cal., for defendant.

ORDER

PECKHAM, District Judge.

## I.  INTRODUCTION.

We are presented with cross-motions for summary judgment in four related cases involving application of the Internal Revenue Code's tax benefit rule, 26 U.S.C. § 58(h), to the determination of tax liability under the alternative minimum tax ("AMT") scheme set forth in 26 U.S.C. § 55.[1]  Plaintiffs in these four cases are 1) Howard and Lenore Weiser; 2) Robert J. and Helen M.L. Stein; 3) John McLeish; and 4) Nils Parson.  All plaintiffs seek tax refunds for some or all of the tax years 1984, 1985, and 1986, on the theory that the § 58(h) tax benefit rule applied to the AMT during these tax years.  Plaintiffs state that the tax return they were required to use—Form 6251—fails to include the tax benefit concept in its computational structure, meaning that they were unable to take advantage of the tax benefit provision.  Applying the tax benefit rule, they argue that they must be excused from paying AMT on preference items from which they received no tax benefit.

Defendant United States takes the position that, as a matter of law, plaintiffs are not entitled to refunds.  The United States advances two separate theories.  First, the government argues that the § 58(h) tax benefit rule does not apply to calculation of tax liability under the AMT.  It argues that Congress built certain tax benefit rules into the AMT, never intending that the tax benefit rule of § 58(h) apply to calculation of AMT liability under § 55.  Rather, § 58(h) applied only to the minimum tax structure which preceded implementation of the AMT.  The AMT's own tax benefit rules are reflected in the computational structure of Form 6251, meaning that plaintiffs were afforded the benefit of the tax benefit rule to the extent Congress intended.  Second, the United States argues that, even were the court to find that the § 58(h) tax bene-

---

1.  The taxable years at issue in these cases are 1984, 1985, and 1986, all before the Tax Reform Act of 1986.  Thus, the court will be interpreting the law as it was before passage of the Tax Reform Act of 1986.  Section 58(h), for example, no longer exists.

fit rule applied to the AMT, the language of that rule prohibits its use to reduce plaintiffs' tax liability.

The facts and exhibits underlying these motions consist of plaintiffs' tax returns for the years in question, plaintiffs' cancelled checks made out to the Internal Revenue Service, and notices from the Internal Revenue Service addressed to plaintiffs denying their applications for refunds. These facts and exhibits are jointly stipulated to by the parties, meaning that there are no questions of fact for the court to resolve in these cases. Thus, the court must determine whether plaintiffs or the United States are entitled to summary judgment as a matter of law. The parties support their own summary judgment motions and oppose their opponents' based on the theories outlined below regarding the applicability of the tax benefit rule to the AMT. Agreeing with one party's theory requires us both to grant that party's motion for summary judgment and deny the motion by that party's opponent. Therefore, the court's discussion will focus on the theories advanced regarding application of the tax benefit rule to the AMT rather than the individual motions.

## II. BACKGROUND.

The plaintiffs in these four cases all claimed deductions[2] in the tax years at issue so large that they resulted in negative taxable income. Under the regular provisions of the Internal Revenue Code, as shown on plaintiffs' 1040 Forms, they were not liable for payment of any tax. However, they were also required to complete Form 6251, dealing with the AMT. Because the AMT designates certain deductions as "tax preference items" and requires the taxpayer to include them in income for purposes of calculating AMT, all plaintiffs were charged with AMT liability.

All plaintiffs except Howard and Lenore Weiser then applied for refunds, using Form 1040X, the amended return form. Joint Stipulation of Facts, Exhibits 7, 12,

18, 22, 26, 29, and 37. (The Weisers had included a tax benefit adjustment on their original tax returns—presumably on the 6251 Form). They based their refund applications on the theory outlined below regarding the tax benefit rule. The Internal Revenue Service denied their applications for refunds. Joint Stipulation of Facts, Exhibits 2, 8, 13, 19, 23, 27, 32, and 38. Plaintiffs then filed suit to require the Internal Revenue Service to pay them the refunds claimed.

The facts applicable to the individual plaintiffs are given below. Since plaintiffs all calculate the effect of the tax benefit rule on their AMT liability in the same manner, only the calculation for the Weisers will be included as an example.

### A. *Howard and Lenore Weiser.*

The Weisers' complaint refers only to the 1986 tax year, when they had gross income of $464,215.00. On their 1040 Form for that year, the Weisers reported negative taxable income of $84,379.00, because of the inclusion of large capital gains deductions and partnership losses. They were eventually required to pay $42,000.00 in tax under the AMT, because the AMT calculation required them to include in alternative minimum taxable income $285,791.00 worth of tax preference items which would not have been included in regular taxable income. They believed their AMT liability should be only $17,533.00, however, based on the following application of the tax benefit rule:

| | |
|---|---|
| Gross Income | $464,215 |
| Non-preference deductions | <217,008> |
| | $247,207 |
| Itemized deductions and personal exemptions | < 45,795> |
| Remaining Income | $201,412 |
| Tax Preference deductions | <285,791> |

---

**2.** The term "deduction" as used here includes both deductions classified as preference items for purposes of calculating AMT and deductions

which were not classified as preference items. The meaning of this distinction will be discussed in greater detail below.

Excess deductions for which no tax benefit received.                    < 84,379 >

In other words, since as discussed below, the Weisers were required to use all their non-preference deductions first, they argue that $84,379 worth of preference item deductions did not actually confer any benefit. Subtracting that figure from their alternative minimum taxable income, the Weisers arrive at an AMTI of $126,667. Thus, they believe they should be subject to AMT of only $17,533, entitling them to a refund of $24,467 of the $42,000 they actually paid.

### B. *Robert and Helen M.L. Stein.*

The Steins complain that they were denied the use of the tax benefit rule in tax years 1984, 1985, and 1986. The Steins reported the following negative taxable income in those tax years:

| 1984 | 1985 | 1986 |
|------|------|------|
| <110,649> | <238,126> | <83,796> |

The Steins reported no regular income tax due for any of those three tax years. Applying the tax benefit rule calculation in the same manner as shown for the Weisers, the Steins reported no AMT due for 1984 or 1985, and only $26,276 AMT due for 1986. This was because they calculated that they had tax preference items yielding no tax benefit of $94,541.00 in 1984, $202,252.00 in 1985, and $88,950.00 in 1986. On the basis that they were denied the opportunity to subtract those amounts from AMTI for those years as they maintain they are entitled to do by the tax benefit rule, the Steins claim refunds of $13,278.00 for 1984, $10,838.00 for 1985, and $18,821.00 for 1986.

### C. *John McLeish.*

McLeish complains of denial of refunds for the tax years 1984 and 1985. McLeish reported negative taxable income of <56,467> in 1984 and <96,242> in 1985. He reported no regular tax due. Applying the tax benefit rule to his AMT calculation, McLeish believed he owed $6808 in AMT for 1984 and $398 in 1985. This was be-

cause he asserts that he had $59,040.00 of tax preference items yielding no tax benefit in 1984 and $98,632.00 yielding no benefit in 1985. He seeks refunds of $6,753 for 1984 and $398 for 1985.

### D. *Nils Parson.*

Parson complains of the tax years 1984, 1985 and 1986.[3] Parsons reported negative taxable income in those years of <161,103> in 1984, <327,633> in 1985, and <324,434> in 1986. He reported no regular tax due in any of those years. He reported AMT due, applying the tax benefit rule, of $6146 in 1984, $33,057 in 1985, and $72,683 in 1986. He claims refunds of the entire amounts of AMT paid in each year, arguing that he had tax preferences for which no benefit was received of $94,541 in 1984, $327,633 in 1985, and $329,588 in 1986.

## III. DISCUSSION.

### A. *Standard for Granting Summary Judgment.*

Federal Rule of Civil Procedure 56(c) provides for the granting of summary judgment where there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Here, however, since the parties have stipulated to all the underlying facts, the court will address only which position prevails as a matter of law. We must determine whether the § 58(h) tax benefit rule applies to the AMT. If it does, we must determine whether, based on the stipulated facts, plaintiffs were entitled to take advantage of the tax benefit rule.

### B. *The Alternative Minimum Tax and the Tax Benefit Rule.*

In order to understand the arguments of the parties in these cases, it is necessary to

---

**3.** While the IRS never formally denied Parsons' 1984 refund claim, they never paid him the

refund either. Therefore, the issue is still before us.

examine the history and function of both the alternative minimum tax and the tax benefit rule.

Since 1969, the Internal Revenue Code has included minimum tax provisions for corporate and individual taxpayers. *See* Pub.L. 91–172. The purpose of the minimum tax is to prevent corporate and individual taxpayers from aggregating deductions to the point where they pay either no tax or a "shockingly low" tax. *First Chicago Corp. v. C.I.R.*, 842 F.2d 180, 181 (7th Cir.1988). The deductions which might otherwise result in this outcome are classified as "tax preference items." Section 301 of the Tax Reform Act of 1969, the first minimum tax provision, set forth a scheme which targeted certain tax preference items, then calculated a minimum tax on these items to be added on to the taxpayer's other tax liability. Pub.L.No. 91–172, 1969 U.S.CODE CONG. & ADMIN.NEWS Vol 1 at 623. Section 301 provided in pertinent part:

> **In General.**—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 10 per cent of the amount (if any) by which—
>
> (1) the sum of the items of tax preference in excess of $30,000, is greater than
>
> (2) the taxes imposed by this chapter for the taxable year ... reduced by the sum of the credits allowable under
>
> (A) section 33 (relating to foreign tax credit),
>
> (B) section 37 (relating to retirement income), and
>
> (C) section 38 (relating to investment credit).

This scheme remained in effect with only minor changes as the only minimum tax formulation in the Internal Revenue Code until 1978.

The Revenue Act of 1978 added an alternative minimum tax formula for non-corporate taxpayers. The AMT formula differed from the minimum tax formula created in 1969 in that it required the taxpayer to first calculate his or her tax under the generally applicable provisions of the Internal Revenue Code, then calculate his or her tax under the AMT formulation. If the AMT formulation produced a higher tax liability than the normal provisions, the taxpayer must pay the difference; in effect, then, the taxpayer paid whichever tax was larger. *See* Pub.L.No. 95–600, 1978 U.S. CODE CONG. & ADMIN.NEWS, 92 Stat. 2872. The new provision, codified at 26 U.S.C. § 55, stated:

> ALTERNATIVE MINIMUM TAXABLE INCOME.—The term "alternative minimum taxable income" means gross income—
>
> (A) reduced by the sum of the deductions allowed for the taxable year,
>
> (B) reduced by the sum of any amounts included in income under section 667, and
>
> (C) increased by an amount equal to the sum of the tax preference items for—
>
> (i) adjusted itemized deductions ..., and
>
> (ii) capital gains....

While the Revenue Act of 1978 stated that it repealed the add-on minimum tax for individuals beginning in 1979 and replaced it with this AMT formulation, other sources indicate that the two provisions co-existed in the Internal Revenue Code until the add-on minimum tax was finally repealed by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA).[4] *Okin v. Commissioner of Internal Revenue*, 808 F.2d 1338, 1339 n. 3 (9th Cir.1987) *cert. den.* 484 U.S. 802, 108 S.Ct. 45, 98 L.Ed.2d 10 (1987). Legislative History to P.L. No. 95–600, 1978 U.S.CODE CONG. & ADMIN.NEWS, Vol 6 at 6965.

The new AMT formulation was amended by TEFRA in 1982 so that alternative minimum taxable income would be defined as "the adjusted gross income (determined without regard to the deduction allowed by section 172) of the taxpayer for the taxable year ... reduced by the sum of [certain deductions] plus ... any amount included in income under section 667, and ... in-

---

**4.** The add-on minimum tax for corporations co-existed in the Internal Revenue Code with the new corporate AMT formulation from 1978 un-

til it was finally repealed by the Tax Reform Act of 1986. *First Chicago,* 842 F.2d at 180.

creased by the amount of items of tax preference." 96 Stat. 411–12. In other words, the taxpayer calculates AMT by beginning with Adjusted Gross Income (AGI), subtracting out certain specified alternative tax itemized deductions (Referred to by the parties as ATID's), and adding in the preference items. This provision was in effect from 1982 until it was amended again by the Tax Reform Act of 1986; thus, it was in effect for the taxable years at issue in these four related cases. Since the add-on minimum tax had been repealed in 1982, the alternative minimum tax provision added by TEFRA was the only minimum tax in effect during those taxable years.

The tax benefit rule was first added to the Internal Revenue Code by the Tax Reform Act of 1976, at a time when only the add-on minimum tax was in effect. No alternative minimum tax existed when Congress enacted the tax benefit rule. Codified at 26 U.S.C. § 58(h), the tax benefit rule provided:

> REGULATIONS TO INCLUDE TAX BENEFIT RULE. The Secretary shall prescribe regulations under which items of tax preference shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's tax under this subtitle for any taxable years. P.L.No. 94–455, 90 Stat. 1553 (1976).

In other words, if a deduction designated as a tax preference item for purposes of the add-on minimum tax did not reduce the taxpayer's regular taxable income, the taxpayer would not be liable for minimum tax on that deduction.

The legislative history to § 58(h) illustrates this concept with the example of a taxpayer who is unable to derive any tax benefit from accelerated depreciated deductions—a tax preference item for purposes of the minimum tax—because the taxpayer had so many itemized deductions. Under the add-on minimum tax as it existed before the addition of § 58(h), minimum tax on the accelerated depreciation deduction would have been added onto the taxpayer's regular income tax despite the fact that the

accelerated depreciation deduction had not benefitted the taxpayer in any way. Congress enacted § 58(h) to avoid this "harsh and arbitrary result." *First Chicago*, 842 F.2d at 181.

While § 58(h) was added to the Internal Revenue Code at a time when the only minimum tax in the Code was the add-on rather than the alternative minimum tax, § 58(h) survived the transition between the two types of minimum tax. Indeed, the provision survives to this date, renumbered and slightly altered by the Tax Reform Act of 1986. Now codified at 26 U.S.C. § 59(g), the current tax benefit rule provides, "The Secretary may prescribe regulations under which differently treated items shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's regular tax for any taxable year." Thus, the tax benefit rule still exists in an almost identical formulation despite the fact that the only minimum tax, corporate or individual, surviving in the Internal Revenue Code is the AMT.

### C. *Applicability of Tax Benefit Rule to AMT.*

Plaintiffs move for summary judgment and oppose the United States' motion for summary judgment on the theory that the tax benefit rule excuses them from paying AMT on any preference items for which they received no tax benefit on their regular income tax in tax years 1984 through 1986. The United States maintains that the tax benefit rule does not apply. As explained above, the AMT provision as amended by TEFRA was in effect for those tax years. The tax benefit rule was also in effect, although the parties agree that the Secretary of the Treasury failed to prescribe regulations for implementation of the tax benefit rule as directed by §§ 58(h) and 59(g).

#### i. Failure of Secretary to Prescribe Regulations.

■ A threshold question in determining whether the tax benefit rule applies to the individual AMT for tax years 1984 through

1986 is whether the Secretary's failure to issue regulations as required by the provision renders the tax benefit rule ineffective. Case law and revenue rulings cited by plaintiffs have held that the tax benefit rule is "in play" despite the failure to implement regulations. *First Chicago*, 842 F.2d at 182.

In *Occidental Petroleum Corp. v. Commissioner of Internal Revenue*, 82 T.C. 819, Decision 41, 240 (1984), the tax court applied § 58(h) to relieve Occidental Petroleum of liability for payment of add-on minimum tax in the 1977 tax year. The court wrote, "Congress could hardly have intended to give the Treasury the power to defeat the legislatively contemplated operative effect of [§ 58(h)] merely by failing to discharge the statutorily imposed duty to promulgate the required regulations.... we must give effect to these provisions...." 82 T.C. at 829. *See also* Revenue Ruling 80–226, 1980–2 Cumulative Bulletin 26 (1980) (applying tax benefit rule to excuse add-on tax minimum tax liability despite Secretary's failure to promulgate regulations). The fact that these authorities applied the tax benefit rule in the context of the add-on rather than the alternative minimum tax does not alter the logic. Therefore, we adopt the reasoning of these authorities and find that the tax benefit rule is in effect even in the absence of the promulgation of regulations by the Secretary of the Treasury.

ii. Applicability of Tax Benefit Rule to TEFRA AMT.

We now turn to the question of whether the tax benefit rule applies to the TEFRA AMT applicable to the tax years 1984 through 1986. The United States contends that the tax benefit rule was intended by Congress only to apply to the add-on minimum tax repealed by TEFRA in 1982 and that it never applied to the AMT. The government makes two points in support of its position.

The government first argues that the tax benefit rule was added to the Internal Revenue Code at a time when the AMT did not yet exist. Given this fact, and the fact that the AMT is structurally different from the add-on minimum tax, the United States argues that it would be inappropriate to apply the tax benefit rule to the AMT. As discussed above, however, Congress retained the tax benefit rule in the Internal Revenue Code after the repeal of the AMT. *See* 26 U.S.C. § 58(h). That this was an affirmative choice rather than oversight is demonstrated by the fact that the provision was renumbered and its language slightly changed by the Tax Reform Act of 1986.

Nevertheless, an in-depth review of the legislative history surrounding retention of the tax benefit rule reveals that Congress intended to limit application of the tax benefit rule to the AMT. The following passage is included in the legislative history of the 1986 Tax Reform Act in the discussion regarding retaining the tax benefit rule:

It is clarified that the application of the tax benefit rule to the minimum tax is within the discretion of the Secretary of the Treasury. Since the regular and minimum taxes generally are computed separately, *relief from the minimum tax under the tax benefit rule is not appropriate solely by reason of the fact that a taxpayer has received no benefit under the regular tax with respect to a particular item.* Legislative History of 1986 Tax Reform Act, 1986 U.S.CODE CONG. & ADMIN.NEWS Vol. 5 at 4350–51 (emphasis added).

The court believes that this passage squarely contradicts plaintiffs' position that the tax benefit rule requires that they be excused from paying AMT on any preference items for which they received no benefit on their regular income tax.

The court is further persuaded of this by the government's second argument that the AMT is structurally unsuited to application of the tax benefit rule. The government correctly points out that the AMT contains several built-in tax benefit provisions. AMT computational structure begins with adjusted gross income (AGI) rather than gross income, meaning that those tax preference items which are itemized deductions for purposes of calculating

AGI are automatically taken into account and produce a tax benefit for the taxpayer.

Plaintiffs concede that this is the case. In response, they argue that, despite the fact that beginning the AMT calculation with AGI means they will receive tax benefit from those itemized deductions actually figured in to compute AGI, this still does not mean that the § 58(h) tax benefit rule should not apply. Plaintiffs argue that if the tax benefit rules built into the AMT under 26 U.S.C. § 55 were intended by Congress to be exclusive, the tax benefit rule would not have been retained in the Internal Revenue Code. They believe that where a taxpayer has enough non-preference itemized deductions (that is, itemized deductions not designated as preference items for purposes of calculating the AMT), the taxpayer might not receive tax benefit from the AMT preference item even though AMT calculation begins with AGI. Plaintiffs argue that a requirement contained in Revenue Ruling 80–226 that taxpayers apply the non-preference itemized deductions first in adjusting gross income has this effect. Plaintiffs argue that this is what happened in their cases, meaning that they did not actually receive any tax benefit from the preference items claimed.

After hearing oral argument on this point, however, the court is not persuaded. At the argument of these motions, the United States represented and plaintiffs conceded that the computational ordering set forth in Revenue Ruling 80–226 is no longer observed. Indeed, plaintiffs admitted that one of their accountants did not even use that ordering. Therefore, we cannot agree that the computational requirements of Revenue Ruling 80–226 undercut the government's argument that the AMT contains built-in tax benefit rules.

The court has determined that, in retaining the tax benefit rule after eliminating the add-on minimum tax, Congress made clear its intent to limit application of the tax benefit rule to the AMT. Also, we have found that the AMT's structure is unsuited to application of the tax benefit rule, since the AMT itself contains built-in tax benefit provisions. Deciding on these factors alone, the court would find that the tax benefit rule does not apply to the AMT on the facts of the cases before us.

There is an additional policy concern that weighs in our decision and bears mentioning, however, concerning the purpose of the AMT. The AMT exists to prevent taxpayers from aggregating deductions to escape taxation. Allowing plaintiffs to avoid application of the AMT simply because they have aggregated sufficient deductions to show a negative income in a given tax year would fly in the face of Congressional intent in enacting the AMT. In sum, we cannot agree that the tax benefit rule operates to excuse plaintiffs from AMT liability in these cases as they contend.

## IV. CONCLUSION.

For the reasons set forth above, plaintiffs' motion for summary judgment is DENIED, and the United States' motion for summary judgment is GRANTED.

IT IS SO ORDERED.