**Howard M. WEISER, and Lenore Weiser; Robert J. and Helen M.L. Stein; John McLeish; and Nils Parson, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 90–16431.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1991.

Decided March 19, 1992.

Peter T. Chamberlin, Walnut Creek, Cal., for plaintiffs-appellants.

Shirley D. Peterson, Gary R. Allen, Kenneth L. Greene, Charles Bricken, U.S. Dept. of Justice, Tax Div., Washington D.C., for defendant-appellee.

Before POOLE, REINHARDT and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Howard and Lenore Weiser, Nils Parson, Robert and Helen Stein, and John McLeish (or collectively, Taxpayers) appeal the district court's grant of summary judgment in favor of the Government on Taxpayers' consolidated tax refund actions. We affirm.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction to hear the refund actions under 28 U.S.C. § 1346(a)(1). We have jurisdiction under section 1291 to hear an appeal from a final order.

■ We review de novo the district court's grant of summary judgment. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Our review is not limited to a consideration of the grounds upon which the district court decided the issues; we can affirm the district court on any grounds supported by the record. *Jewel Cos. v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555, 1564–65 (9th Cir.1984).

## DISCUSSION

■ The facts and proceedings in the district court are set out in detail in the court's order, *Weiser v. United States*, 746 F.Supp. 958, 958–60 (N.D.Cal.1990) (*Weiser I*), and need not be repeated here. The crux of this appeal is the Taxpayers' use of IRC section 58(h),[1] a section no longer in existence but still on the books in a renumbered, slightly modified form, to reduce or eliminate their tax liability under the alternative minimum tax (AMT). Section 58(h) stated that "the Secretary shall prescribe regulations under which items of tax preference shall be properly adjusted where the tax treatment giving rise to such items will not result in a reduction of the taxpayer's tax [liability]." The district court found that section 58(h) was inapplicable to individuals whose tax liability is calculated un-

der the AMT. Taxpayers contend this was error for two reasons. First, they argue that by including the full amount of the preference items in calculating their alternative minimum taxable income, Taxpayers were effectively taxed on preference items for which they received no benefit. Next, they contend that since their tax preference deductions exceeded their gross income adjusted by the non-preference deductions, they received no benefit for a portion of the tax preference items used to calculate their alternative minimum taxable income (AMTI). Thus, they argue, pursuant to section 58(h) they are permitted to reduce their AMTI by the amount that the tax preference items exceed income adjusted by the non-preference deductions. Both contentions are without merit, and therefore we affirm the district court's order for the reasons stated therein, *Weiser I*, 746 F.Supp. at 960–64, as well as those set forth below.

■ To the extent Taxpayers argue that they were taxed on preference items for which they received no tax benefit under the regular tax provisions, they misconstrue the tax code. Items of tax preference are not taxed, they are simply disallowed as deductions from adjusted gross income (AGI) under the AMT. Whether they do or do not generate a tax benefit under the regular code provisions is immaterial in this respect. Congress has made a policy decision that taxpayers cannot exclude these items from adjusted gross income when the AMT is calculated. That decision, while it may result in additional tax liability, does not mean that the disallowed deductions are taxed. Rather, income is taxed without a deduction for the preference items. In other words, unlike the earlier add-on system, the tax is not being calculated on some phantom deduction which had no effect in the real world. It is simply being measured by the taxpayers income without taking certain deductions into account.

Taxpayers next contend that since they received no benefit from certain below-the-

**1.** All statutory references are to the Internal Revenue Code, Title 26, United States Code, as amended and in effect for the years in issue, unless otherwise noted.

line deductions under the regular tax provisions, it is unfair to disallow these deductions under the AMT. Moreover, they argue, despite the Treasury's failure to enact enabling regulations under section 58(h), *see First Chicago Corp. v. Commissioner of Internal Revenue*, 842 F.2d 180, 184 (7th Cir.1988), the section was enacted to prevent this very injustice. Nonetheless, the district court found that section 55 set forth a hermetic structure for calculating the AMT, and thus section 58(h) could not be applied to alter the scheme. Since section 55 calculated the Taxpayers' AMT liability by starting with adjusted gross income, the court found that the AMT provided Taxpayers with a "built-in tax benefit rule." *Weiser I*, 746 F.Supp. at 963–64. Thus, the court reasoned, allowing Taxpayers the benefit of section 58(h) would permit them to double count their deductions. The district court was clearly correct as far as tax preferences were concerned. However, Taxpayers correctly note on appeal that they also seek to reduce their alternative minimum taxable income by below-the-line deductions, and the built-in tax benefit wrought by starting with AGI and adding back tax preference items does not affect below-the-line deductions. Nonetheless, despite the district court's failure to separate the two types of deductions,[2] we entirely agree with its ultimate conclusion. Congress specifically intended to limit the number and type of itemized deductions to be considered in calculating the AMTI, and thus AMT provisions are "structurally unsuited" to the application of section 58(h).

█ Permissible alternative tax itemized deductions (ATIDs) are listed in section 55(e)(1), and the section is perfectly clear in that respect. Although we need not delve into the legislative history of statutes that are clear on their face, the legislative history of section 55(e)(1) confirms that Congress meant nothing other than what the language of the statute suggests. That is, deductions were to be limited exclusively to the ATIDs:

> [T]he committee has provided an alternative minimum tax which is intended to insure that, when an individual's ability to pay taxes is measured by a broad-based concept of income, a measure which can be reduced only by a few of the incentive provisions, tax liability is at least a minimum percentage of that broad measure. *The only deductions allowed, other than costs of producing income, are for important personal or unavoidable expenditures* (housing interest, medical expenses and casualty losses) or for charitable contributions. . . .

S.Rep. No. 97–494, 97th Cong., 2d Sess. 1 (1982), *reprinted in* U.S.C.C.A.N. 781, 876 (emphasis added).[3] The Taxpayers' use of "below-the-line" deductions specifically disallowed as ATIDs, the so-called "non-ATIDs," to reduce the tax preference amount flatly contradicts Congressional intent to disallow those types of deductions from the AMT calculations. Moreover, the AMT provisions include a large personal exemption—$40,000 for married couples filing a joint return, $32,000 for single taxpayers; presumably this figure was intended to reflect the fact that many itemized deductions had not been included as ATIDs.[4]

## CONCLUSION

Congress determined that some individuals were able to make use of existing deductions in a manner that allowed them to use no, or a shockingly low, portion of their incomes for the payment of taxes. *See First Chicago Corp.*, 842 F.2d at 181. It created the AMT to ameliorate that situation. In so doing it took the simple expedient of eliminating certain deductions. Taxpayers now seek to recapture all or a part

---

2. We note that Taxpayers did not do so in their calculation, which, no doubt, proved misleading.

3. The legislative history is discussed in detail in *Weiser I*, 746 F.Supp. at 960–62.

4. To the extent *Breakell v. Commissioner*, 97 T.C. 282, T.C.M. (CCH) Dec. 47,595 (Sept. 5, 1991), allows taxpayers to deduct non-ATIDs when calculating their AMTI, we disagree with, and decline to follow, the Tax Court's decision. By permitting the deduction of non-ATIDs, the approach adopted by the court in *Breakell* undermines the tax scheme which Congress so carefully constructed in section 55.

of those deductions, and assert that any other approach is unfair because it deprives them of certain benefits.

Were we to take Taxpayers' argument to its logical conclusion, all changes in tax policy which eliminate deductions or increase tax liability would result in "unfair taxation" of deductions. This is simply not the case. For example, if tomorrow Congress decided to disallow the mortgage loan interest deduction, homeowners would not be taxed on this former deduction, they would merely be taxed on income which was not reduced by that deduction. Likewise, under the AMT, Congress has specifically decided to tax income without allowing certain kinds of above-the-line and below-the-line deductions.

The district court properly held that the tax benefit rule cannot be used to reduce the Taxpayers' AMTI in this case.

AFFIRMED.