97 F.3d 1458
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Alvin Howard CANELL, Plaintiff-Appellant,
v.
Riz BRADSHAW; Warner Johnson; Preston Bebee; Clackamas
County; Frank Hall; Denis Dowd; Susan E
Hilderbrand, Defendants-Appellees.
Alvin Howard CANELL, Plaintiff-Appellant
v.
Frank A HALL, Director of Oregon Department of Corrections;
Oregon Public Utility Commission; John/Jane Doe, John Doe
1, John Doe 2, Jane Doe (in official and individual
capacities) Trent V Axen, Law Library Coordinator OR State
Penitentiary; Harvey Sewoul, Assist. Supt. Social Services
OR State Penitentiary, Defendants-Appellees.
 Nos. 95-35351, 94-36208.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 20, 1996.*
Decided Sept. 25, 1996.
 
 Before: ALDISERT,** PREGERSON and T. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 In Appeal No. 95-35351, Alvin Howard CANELL, an inmate at the Oregon State Penitentiary in Salem, Oregon, appeals pro se from a district court order granting summary judgment in favor of the Appellees on his claim under 42 U.S.C. § 1983 that his constitutional right of access to the courts was violated. Appellant also argues that Appellees subjected him to cruel and unusual punishment by being deliberately indifferent to the pain that he suffered as the result of losing a dental filling and by having a nurse, rather than a physician or a dentist, evaluate his condition. We have jurisdiction of this action under 28 U.S.C. § 1291. We review de novo, Weiser v. United States, 959 F.2d 146, 147 (9th Cir.1992), and affirm.
 
 
 3
 In the consolidated appeal at No. 94-36208, Appellant appeals pro se from a district court order granting summary judgment in favor of the Appellees on additional claims for damages and equitable relief under 42 U.S.C. § 1983 that his constitutional right of access to counsel and the courts was violated. Although the order from which Appellant appealed was not final, we have jurisdiction under 28 U.S.C. § 1291 because the remaining claims were subsequently finalized, and there was no prejudice to the parties. See Fadem v. United States, 42 F.3d 533, 535 (9th Cir.1994). We also review this appeal de novo, Weiser, 959 F.2d at 147, and affirm.
 
 I.
 A.
 
 4
 The Oregon Department of Corrections has contracted with Clackamas County to provide services to inmates housed at the Oregon Department of Corrections Intake Center, which is adjacent to the Clackamas County Jail in Oregon City, Oregon. The purpose of the Intake Center is to conduct an initial assessment and classification of inmates in order to determine the Department institution to which the inmate ultimately will be sent to serve the balance of his or her sentence. Appellant was incarcerated at the Intake Center from May 17, 1993 to June 8, 1993; he then was transferred to the Oregon State Penitentiary.
 
 
 5
 At the time of his incarceration at the Intake Center Appellant was, in his own words, "very active" in the courts and had several cases either pending or "needing to be filed." One of these cases was a Section 1983 action against former county sheriff Bill Brooks alleging unsanitary conditions at the Clackamas County Jail. While Appellant was incarcerated at the Intake Center, the county filed a motion for summary judgment with "expedited consideration requested." Appellant asserts that he was unable to conduct any legal research on the action against Brooks (as well as other pending actions) because the law library at the Intake Center had no Supreme Court Reporters, Federal Reporters, Federal Supplements, or Federal Digests available. Appellant acknowledges that he could file a written request to see any reported case, but this "paging system" was "next to useless" because without the digests he had no way to determine which cases he needed. Moreover, it took time to obtain each case requested, and without ready access to casebooks, Appellant "could not brouse [sic] in search of inspiration, creativity and ideas from other cases." Appellant further argued that even when he did request cases, they were not always provided.
 
 
 6
 Appellant also argues that Appellees denied him access to the courts by not furnishing supplies needed to prepare legal documents for filing. Appellant was denied use of a typewriter or pen. He was provided with a 2-inch "golf pencil," but says he had great difficulty using this short pencil because he has carpal tunnel syndrome. Appellant further argues that Appellees also refused him permission to photocopy documents, including exhibits to be submitted to the court in response to a motion for summary judgment.
 
 
 7
 Finally, Appellant argued that he was denied adequate medical treatment. While Appellant was at the Intake Center he lost a dental filling. On June 6, he requested medical attention. On June 7, he was examined by a nurse, who allegedly offered Appellant an over-the-counter pain reliever, but advised that further dental care would not be provided until Appellant had been sent to another institution. On June 8, Appellant was transferred to the State Penitentiary. Appellant argued he was in "severe pain and agony," and that the nurse saw "the large hole" in his tooth, "the tears, and the swollen gums," but still refused to permit Appellant to see a dentist. Appellant contends that the nurse acted with deliberate indifference. He further argues that Appellees had a duty to see that such medical decisions are made by qualified personnel rather than by a nurse with no training in dentistry.
 
 
 8
 On July 20, 1993, Appellant filed an amended complaint seeking injunctive and declaratory relief and damages, alleging various constitutional violations. On August 4, 1993, state officials answered and, one week thereafter, moved for summary judgment on the ground that they had qualified immunity. On August 18, 1993, county officials answered and, one month later, filed a motion to dismiss.
 
 
 9
 On November 23, 1993, the district court issued an order and opinion granting partial summary judgment in favor of the state officials. Appellant then filed a second amended complaint that alleged violations only of 42 U.S.C. § 1983. In March 1994, county and state officials answered.
 
 
 10
 On January 17, 1995, county officials filed a motion for summary judgment that Appellant, with the assistance of counsel, opposed. On March 8, 1995, the district court granted the motion and entered judgment in favor of the county officials. On March 13, 1995, following a proceeding at which Appellant's lawyer was present, the district court issued a minute order allowing state officials to join in the county officials' motion for summary judgment. The court further ordered that the "opinion and order entered 3-8-95 granting summary judgment for Clackamas County defts will apply to all state defts." SER 112. Apparently, neither Appellant nor his counsel objected, and accordingly, the court dismissed Appellant's action on March 22, 1995. SER 113. The appeal at No. 94-35351 followed.
 
 B.
 
 11
 Coincident with Appellant's action against Bradshaw et al., Appellant was pursuing another Section 1983 action against Frank Hall, the Director of the Oregon Department of Corrections, and other Department employees for alleged deprivations of meaningful access to the courts. Appellant argued that he was denied access to the courts because the telephone system available to prisoners automatically disconnects a telephone call if the call is transferred to a third party. Appellant presented evidence that on several occasions this disconnect feature prevented him from contacting attorneys because he was disconnected when the receptionist at the law firm attempted to transfer his phone call to the attorney. On December 2, 1994, the district court granted summary judgment on the damage claims on the basis of qualified immunity. Appellant filed a notice of appeal on December 14, 1994. Thereafter, on March 1, 1995, the district court granted summary judgment on Appellant's claims for equitable relief. We hear this appeal at No. 94-36208.
 
 II.
 
 12
 Appellant raises several contentions of error in the appeal at No. 94-35351. We address each in turn.
 
 A.
 
 13
 Appellant's primary argument in this appeal is that the district court erred because genuine issues of material fact precluded an entry of judgment as a matter of law. Our review of the record evidence, however, demonstrates that the Appellees gave Appellant access to a constitutionally adequate law library; did not unconstitutionally deny Appellant photocopying services; and provided Appellant with constitutionally sufficient dental care. We conclude that no dispute of material fact exists with regard to any of Appellant's constitutional claims, and that the district court properly granted summary judgment.
 
 
 14
 (1)
 
 
 15
 Appellant contends that the library used an unconstitutional "paging system" because inmates had to request photocopies of federal cases, rather than being allowed to review the reporter volumes themselves. Although this statement accurately reflects prison library policy, there is no constitutional violation here.
 
 
 16
 The prison law library materials are maintained at levels established by two consent decrees approved by the Oregon federal district court. SER 48-49, 55-56. Indeed, the library contains the following research and reference materials relevant to civil rights and habeas cases: (1) samples of 975 state civil legal forms; (2) Oregon state cases and statutes, the Oregon Digest, and Shephard's Oregon Citations; (3) complete annotated versions of Titles 18 and 28 of the United States Code; (4) annotated versions of Sections 1981 through 1988 of Title 42 of the United States Code; (5) Shephard's United States Citations; (6) Treatises such as Criminal Constitutional Procedure, Criminal Trial Procedure, Criminal Law Form Book, Evidence, Handbook on Criminal Law, Federal Criminal Defense Handbook for the District of Oregon, Federal Habeas Corpus, Search and Seizure, Federal Civil Rights Acts, Prisoner Self-Help Litigation Manual, and Legal Research in a Nutshell. SER 48-49, 61. In addition, a notice posted in the law library informs inmates that reported federal cases since 1960 will be made available to them from the County Law Library. SER 49. Inmates may determine what cases they need copies of by browsing through the code annotations, treatises, and self-help materials. They then may forward requests for copies of cases to the county law librarian, who fills the requests the same day they are received at no charge to the inmates. SER 51. Nothing in the record suggests that there is any limit on the number of cases for which inmates may request and receive copies.
 
 
 17
 We recognize that certain "paging systems" have been condemned by courts throughout the country. See Toussaint v. McCarthy, 801 F.2d 1080, 1109-10 (9th Cir.1986) (paging system at San Quentin prison unconstitutional), cert. denied, 481 U.S. 1069 (1987); Williams v. Leeke, 584 F.2d 1336, 1339 (4th Cir.1978), cert. denied, 442 U.S. 911 (1979); Corgain v. Miller, 708 F.2d 1241, 1250 (7th Cir.1983) ("exact cite" system is unconstitutional). However, under a strict "paging system," inmates are denied direct access not only to casebooks, but also to other reference and research materials. The instant library policy does not resemble such a system. As the district court stated, the physical absence of federal case reporters from the library is not constitutionally significant where the inmates have ready access to photocopies of the cases, which they may retain, and have direct access to the pertinent annotated codes, as well as to "ample reference and research material which is sufficient for [Appellant's] searches of inspiration and creativity." Indeed, because the prisoners are given free photocopies, the system may actually facilitate, rather than hinder, legal research. Taken together, then, these resources are sufficient to enable inmates to prepare meaningful civil rights complaints and habeas petitions.
 
 
 18
 Moreover, in order for Appellant to establish that he was denied meaningful access to the courts, he must submit evidence showing that he suffered an "actual injury" as a result of the defendants' actions. See Lewis, 116 S.Ct. 2174, 2180 (1996) (stating that an inmate bringing an access to the courts claim must establish that he has suffered an "actual injury"); Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir.1994), cert. denied, 116 S.Ct. 91 (1995) (holding that an inmate must establish that he has suffered an "actual injury" where he alleges that he was denied reasonable access to the law library). Prisoners enjoy a fundamental constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977); Cornett v. Donovan, 51 F.3d 894, 897 (9th Cir.1995) (right of access grounded in due process and equal protection clauses), cert. denied, 116 S.Ct. 2580 (1996). However, inmates do not have an "abstract, free-standing right to a law library or legal assistance." Lewis, 116 S.Ct. at 2180. Although all prisoners must be provided with the tools necessary to file lawsuits challenging their sentences or the conditions of their confinement, only inmates who can show that they suffered actual injury in their efforts to pursue a particular legal claim may assert claims based on their right of access to the courts. Lewis, 116 S.Ct. at 2180; Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989).
 
 
 19
 Although Appellant's general factual allegations of injury arguably might have sufficed at the pleading stage (because on a motion to dismiss the court must presume that general allegations embrace those specific facts that are necessary to support the claim), these allegations fail at the summary judgment stage where the Appellant must set forth by affidavit or other evidence specific evidence of actual injury and not merely abstractions. Lewis, 116 S.Ct. at 2183 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). This Appellant has failed to do. See also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) (stating that sweeping conclusory allegations will not suffice to prevent summary judgment). Because Appellant failed to establish a triable issue of fact showing that he was actually denied access to the courts as required by Casey, the district court properly ordered summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Lewis, 116 S.Ct. at 2179-2180; Vandelft, 31 F.3d at 797.
 
 
 20
 (2)
 
 
 21
 Appellant's second argument, that summary judgment was improper because there was evidence that he was denied the opportunity to photocopy various documents, also must fail. As the Supreme Court has recently emphasized, the right of access to the courts is the "right to bring a grievance that the inmate wishe[s] to present." Lewis, 116 S.Ct. at 2181. It is not a right "to litigate effectively once in court." Id. Thus, in order to prevail on this claim that his constitutional right was violated, here again Appellant must show an "actual injury" by demonstrating that the services hindered his efforts to pursue a legal claim. Because Appellant has pointed to no such injury, Appellant has failed to establish a triable issue of fact showing that he was actually denied access to the courts. Adhering to the teachings of Casey, we must affirm the district court order granting summary judgment.
 
 
 22
 (3)
 
 
 23
 Next, summary judgment was properly entered on Appellant's Eighth Amendment claim, because the short delay in replacing the lost filling could not constitute cruel and unusual punishment. To establish unconstitutional treatment of a medical condition, a prisoner must show
 
 
 24
 deliberate indifference to a "serious" medical need. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." The "routine discomfort" that results from incarceration and which is "part of the penalty that criminal offenders pay for their offenses against society" does not constitute a "serious" medical need.
 
 
 25
 Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir.1994) (citations omitted). A delay in surgery or treatment can constitute deliberate medical indifference only if the delay caused the harm. Shapley v. Nevada Board of State Prison Commissioners 766 F.2d 404, 407 (9th Cir.1985). Appellant has failed to demonstrate any injury resulting from the delay. Accordingly, there could be no constitutional violation, and summary judgment was properly ordered.
 
 B.
 
 26
 Appellant also argues that the district court erred in granting summary judgment to the state officials sua sponte. A district court may grant summary judgment to a non-moving party sua sponte so long as the other party has had an adequate opportunity to address the relevant issues. Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir.1982). Appellant's claims against the state officials were based solely on their alleged responsibility for actions taken by the county officials at the Intake Center, a facility operated jointly by the county and state. In granting summary judgment to the county defendants, the district court resolved the identical issues implicated in Appellant's claims against the state officials. Accordingly, Appellant had a full and fair opportunity to address these issues when he responded to the county officials' motion for summary judgment. We conclude that the district court's sua sponte grant of summary judgment to the state officials was proper.
 
 C.
 
 27
 In his brief Appellant also discusses (1) whether the State owed state prisoners Bounds protections while state prisoners were being housed at County facility; and (2) whether the state could contract out its responsibilities to state prisoners to county defendants. However, these questions were resolved in Appellant's favor. Indeed, the district court rejected the state defendants' "novel proposition that a state may avoid its constitutional obligations to inmates by contracting with a third party to house those inmates." Canell, 840 F.Supp. at 1388. Accordingly, Appellant was not aggrieved by the district court's ruling on this issue, and may not assign it as error. See Bernstein v. GTE Directories Corp., 827 F.2d 480, 482 (9th Cir.1987).
 
 III.
 
 28
 Appellant proffers two bases in support of his contention in Appeal No. 94-36208 that Appellees violated his constitutional rights. First, Appellant contends that his rights were denied when the Appellees installed a telephone system that automatically disconnects a telephone call when the call is transferred to another line. Second, Appellant again contends that his rights were denied when the prison law librarian refused to photocopy requested documents. Both contentions are unavailing.
 
 
 29
 Of course, the First Amendment grants prisoners a limited right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821-23 (1977). As the Supreme Court recently clarified, that right is limited to " 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " Lewis, 116 S.Ct. at 2180 (quoting Bounds, 430 U.S. at 825). Thus, the state may not burden this First Amendment right with practices that are not reasonably related to legitimate penological objectives, nor act with the intent of chilling the right. Turner v. Safley, 482 U.S. 78, 89 (1987). We turn now to Appellant's two contentions.
 
 
 30
 First, the record clearly supports the district court's grant of summary judgment on qualified immunity grounds because the disconnect feature of the new telephone system is reasonably related to a legitimate penological interest. Under the previous telephone system, an inmate could call a local telephone number and then ask to be transferred to another number; prison officials were able to record the conversation but could not determine the second telephone number. Thus, inmates were using the prison telephone system to conduct drug transactions, to commit credit card fraud, to obtain fraudulent documents and weapons, and to harass victims. The new system eliminates that problem, because the automatic disconnect feature ensures that recorded telephone calls may also be traced. The prevention of criminal activity committed by prison inmates is, of course, a reasonable legitimate penological interest. We note further that, in any event, the Appellees have provided alternative means--including a separate telephone system--for inmates to contact courts and attorneys. Accordingly, we hold that the district court properly determined that a reasonable factfinder must conclude that Appellees acted reasonably in installing and maintaining this new telephone system.
 
 
 31
 Second, the record supports the district court's determination that prison officials acted reasonably with regard to Appellant's request for photocopies. The Department of Corrections provides any indigent inmate free photocopying services of legal documents if the inmate demonstrates that duplication cannot be accomplished manually and that the documents are required by the court or by procedural rule. Or.Admin.R. 291-139-040(5)(c). For duplication of any other document, indigent inmates are "provided with supplies necessary (i.e. [,] paper and carbon paper) to hand duplicate or type the material." Id. Appellant concedes that his requests fall within the latter category, but argues that his access to the courts nonetheless was denied because his carpal tunnel syndrome rendered him unable to duplicate the documents himself.
 
 
 32
 On this issue, there is no evidence that Appellees' actions were inconsistent with prison regulations. Moreover, these rules are consistent with local district court rules and with established case law. See Johnson v. Moore, 948 F.2d 517 (9th Cir.1991). Further, Appellant has not asserted that Appellee Axen had any knowledge of Appellant's condition or that Axen was aware that writing or typing caused Appellant pain. Indeed, the record indicates that Axen had observed Appellant typing and writing in the library, and had never seen Appellant in pain or having any difficulty in typing or writing. For these reasons, a reasonable officer could have believed that denying Appellant's photocopying request was lawful. Accordingly, the district court did not err by granting summary judgment. Cf. Johnson, 948 F.2d at 521.
 
 IV.
 
 33
 We have considered all arguments advanced by the parties and conclude that no further discussion is necessary.
 
 
 34
 The judgments of the district court are AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3