**UNITED STATES of America**

v.

**Ralph H. DECKELBAUM, et al.**

**Civ. A. No. JFM–91–1743.**

United States District Court,
D. Maryland.

Jan. 14, 1992.

Larry Adams, Asst. U.S. Atty., Baltimore, Md., Michael J. Salem, U.S. Dept. of Justice, Washington, D.C., for U.S.

David B. Tatge, Washington, D.C., for Ralph Deckelbaum.

---

## MEMORANDUM

MOTZ, District Judge.

The United States has filed this action against Ralph H. Deckelbaum and Vera M. Deckelbaum, seeking to recover a tax refund paid by the Internal Revenue to the Deckelbaums in connection with their 1985 federal individual income tax return. The case presents the question of whether the Deckelbaums can adjust certain tax preference items downward for the purpose of determining the amount of the alternative minimum tax ("AMT") which they owed for 1985. The parties have cross-moved for summary judgment.

### I.

The pertinent facts have been stipulated to and may be briefly stated. The Deckelbaums filed their original 1985 return on or about August 15, 1986. On the original return they reported negative taxable income in the amount of ($500,358.00), no regular tax due, tax preferences (within the meaning of 26 U.S.C. § 57) in the amount of $1,256,206.00 and an AMT liability of $149,296.00.[1] The original return also reflected that the Deckelbaums had $261,323.00 of general business credits. However, such credits may not be offset against the AMT, and they were not otherwise used by the Deckelbaums in calculating their AMT liability on the original return.

On or about April 5, 1989, the Deckelbaums filed an amended 1985 return on which they reported an AMT liability of $97,243.00, which was $52,053.00 less than the AMT shown to be due on the original return. In arriving at this $97,243.00 figure, the Deckelbaums added their tax preferences of $1,256,206.00 to their negative taxable income of ($500,358.00), which resulted in a revised taxable income of $755,848.00. They computed that the regular tax before credits on this amount of taxable income would have been $358,566.00. If the Deckelbaums had in fact been subject to this regular tax liability of $358,566.00, they could have used their $261,323.00 of general business credits to reduce their regular tax liability to $97,243.00. Therefore, contending that under 26 U.S.C. § 58(h) their tax preferences should be adjusted downward to the extent that the preferences had not resulted in a reduction of their regular tax liability,[2] the Deckelbaums reduced their tax preferences on their amended return from $1,256,206.00 to $995,939.00—the preference amount which would result in an AMT liability of $97,243.00.

On June 26, 1989, the Internal Revenue Service approved the amended return and refunded to the Deckelbaums the sum of $52,053.00, plus statutory interest of $18,076.00, for the 1985 tax year. However, on September 26, 1989, the IRS changed its position and demanded that the Deckelbaums repay with interest the amount it had refunded to them.

### II.

Section 58(h), upon which the Deckelbaums rely, provides in relevant part that "items of tax preference shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's tax under this subtitle."[3] Section 58(h) was enacted in

---

1. A capital gains deduction of $1,255,930.00 constituted almost all of the tax preferences. The other two tax preference items were a dividend exclusion of $200.00 and an accelerated depreciation on certain real property in the amount of $76.00.

2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect in 1985. It might be helpful to note, however, that old § 58(h) is now § 59(g).

3. Section 58(h) actually requires the Secretary of the Treasury Department to "prescribe regulations under which items of tax preference shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's tax under this subtitle...." The Secretary has prescribed no such regulations. The Government does not contend, however, that the absence of such regulations nullifies the statutory mandate. Rather, it implicitly concedes that in cases where § 58(h) is applicable, the IRS must compute the tax which is due and owing as though regulations had been issued. Cf. *First Chicago Corp. v. Commissioner*, 842 F.2d 180, 183 (7th Cir.1988).

1976 against the background of a provision of the Internal Revenue Code (originally passed as part of the Tax Reform Act of 1969) imposing an add-on minimum tax of 15% on certain tax preference items. Its purpose was to prevent a person who derived no tax benefit from a tax preference from being required to pay the add-on minimum tax on that preference. *See* S.Rep. No. 938, 94th Cong., 2d Sess. 113–14 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3439, 3548–49. In accordance with this purpose, § 58(h) has been applied to permit taxpayers to take into account in determining their add-on minimum tax liability credits which were available to them but which otherwise would have gone unused because tax preference items had reduced their taxable income. *See Occidental Petroleum Corp. v. Commissioner*, 82 T.C. 819 (1984); *First Chicago Corp. v. Commissioner*, 842 F.2d 180 (7th Cir.1988), *aff'g* 88 T.C. 663 (1987).

In the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") Congress repealed the add-on minimum tax for noncorporate taxpayers and replaced it with the AMT provisions here in issue.[4] The question presented is whether the holdings in *Occidental Petroleum* and *First Chicago* should be extended to cases involving the AMT. I find that they should not be so extended for three separate, but closely interrelated, reasons.

First, the legislative history of TEFRA indicates that Congress enacted the AMT to ensure that a taxpayer with a significant level of economic income could not avoid all tax liability on that income by any means:

> The committee has amended the present minimum tax provisions applying to individuals with one overriding objective: no taxpayer with substantial economic income should be able to avoid all tax liability by using exclusions, deductions, and *credits.* (emphasis supplied).

S.Rep. No. 494, 97th Cong., 2d Sess. 108 (1982), *reprinted in* 1982 U.S.C.C.A.N. 781, 876. The principle of tax computation upon

which the Deckelbaums' 1985 amended return was based is directly contrary to this stated objective. Although the Deckelbaums in fact reported an AMT liability of $97,243.00, if the general business credits which they used as an offset against their hypothetical regular tax liability would have been great enough to reduce that liability to zero, they would have paid no AMT.

Second, there is an important difference between the methods by which the add-on minimum tax and the AMT are calculated. The add-on minimum tax is computed on a tax base consisting of the sum of a taxpayer's tax preferences less an applicable minimum tax deduction. The minimum tax is then added to the taxpayer's regular tax in order to determine his total income tax liability. Therefore, a taxpayer who reports items of tax preference but who, irrespective of such items, would have owed no tax because of the availability of credits subjects himself to tax liability under the add-on tax provisions solely by virtue of the fact that he reports the tax preference items. Otherwise stated, the taxpayer in such a case can avoid payment of the add-on minimum tax simply by not claiming the items of tax preference. The holdings in *Occidental Petroleum* and *First Chicago* were prompted, at least in part, by the need to resolve this senseless anomaly. However, no such anomaly is present in cases (like the present one) involving the AMT because in calculating the alternative minimum taxable income upon which the AMT is based, tax preference items are effectively not deducted. Therefore, the taxpayer cannot avoid payment of the AMT by not claiming such items.

Third, although when read by itself § 58(h) is virtually incomprehensible, when considered in conjunction with the AMT its express language dictates the conclusion which I have reached. It requires the adjustment of items of tax preference only "where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's tax *under this subti-*

---

**4.** The TEFRA AMT provisions were themselves repealed by the Tax Reform Act of 1986, and replaced with a more comprehensive AMT scheme. Tax Reform Act of 1986, P.L. No. 99–514, § 701, 100 Stat. 2085, 2321.

*tle....*" The "subtitle" referred to is the entirety of subtitle A—the subtitle imposing income tax liability. Under the AMT provisions the treatment of tax preferences does not reduce a taxpayer's income tax liability because, as stated above, tax preference items are effectively not deducted in calculating the alternative minimum taxable income upon which the AMT is computed. This, of course, is consistent with the very purpose of the AMT provisions, as stated in the legislative history of TEFRA, to require the payment of a minimum tax by any individual with substantial economic income, irrespective of whatever exclusions, deductions or credits he may have available to him.[5]

In short, I find that § 58(h) did not entitle the Deckelbaums to use their general business credits in any manner to calculate their AMT liability.

---

5. Rev.Rul. 84–124, 1984–2 C.B. 14, upon which the Deckelbaums also rely, is not dispositive. That ruling is premised upon a recognition that the manner in which the AMT is calculated can result in the double-counting of a capital gains deduction against the taxpayer. As set forth in the ruling:

> Because the capital gains preference item is deducted in arriving at adjusted gross income, the determination of the adjusted itemized deductions preference is a direct function of the capital gains preference item. If a taxpayer has the adjusted itemized deductions preference, $1.00 of capital gain deduction will generate $1.60 of total tax preferences ($1.00 of capital gains preference and $0.60 of additional adjusted itemized deductions prefer-

ence). However, the $1.00 of capital gains deduction will only produce a tax benefit of $1.00, the amount by which it reduces taxable income.

In applying § 58(h) to remedy this fundamentally unfair result, Rev.Rul 84–124 merely parallels the decisions in *Occidental Petroleum* and *First Chicago* which applied § 58(h) to avoid the anomaly there presented. Moreover, § 58(h) aside, traditional considerations of tax equity, which § 58(h) certainly was not intended to contract, *see Occidental Petroleum,* 82 T.C. at 826, dictate that an adjustment be made to avoid double-counting an item of tax preference against the taxpayer. In this case, there was no double-counting of the Deckelbaums' tax preference items.