Fred M. ALLISON and Janet
Allison, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. MO–91–CA–092.

United States District Court,
W.D. Texas,
Midland–Odessa Division.

June 25, 1992.

T. John Ward, Brown Maroney & Oaks
Hartline, Houston, Tex., for plaintiffs.

Jon E. Fisher, Dept. of Justice, Dallas,
Tex., for defendant.

## ORDER

BUNTON, Chief Judge.

BEFORE THIS COURT is the Defendant's Motion for Summary Judgment and the Plaintiffs' Cross Motion for Summary Judgment based on stipulated facts. Both the Defendant and the Plaintiffs have filed briefs in support and in opposition of Summary Judgment. After consideration of the arguments of all parties, along with applicable case law and statutory authority, the Court finds Defendant's Motion for Summary Judgment contains merit and is GRANTED.

## ISSUE

Whether the Plaintiffs are entitled to a refund of $261,196 of income tax paid on their 1984 income tax return, and any statutory interest as may be provided by law, as a result of a decrease in their alternative minimum tax liability.

## COURT'S HOLDING

No.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show the moving party to be entitled to judgment as a matter of law." Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing there is a genuine issue for trial.

Thus, the focus of this Court is upon disputes over material facts. "The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits,

must demonstrate that no genuine issue of material fact remains." *Sims v. Monumental General Ins. Co.,* 960 F.2d 478, 479 (5th Cir. May 11, 1992). Facts which might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir.1987), *cert. denied* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), and the cases cited therein.

The Supreme Court's 1986 trilogy of summary judgment cases clarified the test for granting summary judgment. In *Anderson v. Liberty Lobby, Inc.,* the Court stated the trial court must consider the substantive burden of proof imposed on the party making the claim. In the case before this Court, the Plaintiff has the burden with respect to its claims, and Defendants have the burden with respect to defenses and claims for affirmative relief they raise.

*Anderson v. Liberty Lobby* requires this Court to substantively evaluate the evidence offered by the moving and non-moving parties to determine whether the evidence raises a "material" fact question which is "genuine". The *Anderson* court defined "material" as involving a "dispute over facts which may affect the outcome of the suit under the governing law." *See also James By James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990).[1]

In the second case, the Supreme Court reiterated where the party moving for summary judgment establishes prima facie there is no genuine issue as to any material fact, the non-moving party must then come forward with "specific facts" showing a genuine issue for trial. It must be "more than simply ... there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The third case in the trilogy, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct.

2548, 91 L.Ed.2d 265 (1986), held where the moving party shows the opposing party is unable to produce evidence in support of its case, summary judgment is appropriate. In *Celotex Corp.,* it was not necessary for the motion for summary judgment to be supported by affidavits or other material specifically negating the non-moving party's claim, so long as the District Court was satisfied there was an absence of evidence to support it. At that point, the burden shifted to the non-moving party to produce evidence in support of its claims. If it did not produce any, summary judgment was required.

This Court has demonstrated its willingness to allow parties their day in court in borderline cases where, under the governing law or reasonable extensions of existing laws, the hearing of some testimony would be helpful to understanding the proper application of the law. Such is not the case in the suit now before the Court, since it is convinced there is no genuine dispute on material issues which prevents the entry of summary judgment.

## JURISDICTION

This Court has jurisdiction to hear this case pursuant to Title 28 of the United States Code § 1346(a)(1). A taxpayer must pay the full amount of an income tax deficiency before he/she may challenge its correctness by a suit for refund under 28 U.S.C. § 1346(a)(1). The District Courts have original jurisdiction of a "civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority, or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws." 28 U.S.C. § 1346(a)(1).

## FACTS

The pertinent facts have been stipulated to and will be briefly stated. The plaintiffs

---

1. Specifically, the *James* Court stated, "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court."

(Allisons) timely filed their 1984 Form 1040 U.S. Individual Income Tax Return and paid tax in the amount of $1,141,298, of which $1,113,358 was regular and alternative minimum tax and $27,940 was recapture of investment tax credits. On or before October 17, 1988, the plaintiffs filed a Form 1040x Amended U.S. Individual Income Tax Return, resulting in a claim for refund for the calendar year 1984 in the amount of $236,685. The plaintiffs completed all of the requirements to file a claim for a refund on a timely basis. On April 11, 1991, the Internal Revenue Service (hereinafter "IRS") provided a written notice denying the plaintiffs' claim for a refund. This written notice meets the requirements of the IRS Code ("Code") § 6532(a) for filing a petition in the federal court.

In 1984, Plaintiffs realized and reported on their federal income tax return net long term capital gains of $4,551,627. After reducing this gain by the 60% long term capital gain deduction which was then available under Code § 1202, the taxable portion of the gain was reported for regular tax purposes as $1,820,651. Plaintiffs, in 1984, had a carry forward of statutory depletion deductions in the amount equaling $3,065,013 and current depletion deductions for 1984 of $379,026 for total depletion deductions available as of the end of 1984 of $3,444,039.

The Plaintiffs in computing their 1984 regular income tax liability, were required by Code §§ 611 and 613A to use $1,904,463 of their available depletion deductions of $3,437,787 to reduce their regular taxable income. As a result of claiming the $1,904,463, Plaintiffs reduced their potential depletion by $1,904,463 for the years after 1984, thus reducing their depletion carry forward from $3,437,787 to $1,533,324.

A portion of the depletion deductions provided in Code § 613A that are a tax preference reduce Plaintiffs' regular income tax liability but do not reduce their overall Subtitle A tax liability. The depletion deductions that are a tax preference do not cause Plaintiffs' overall Subtitle A tax lia-

bility to be increased. The Plaintiffs were required to deduct the entire $1,904,463 of depletion in arriving at their adjusted gross income. The allowable depletion deductions provided by the Code § 613A of $1,904,463 contributed to Plaintiffs' Tentative Alternative Minimum Tax of $1,113,358. After the denial for a refund by the IRS, the plaintiffs recalculated the amount of the refund to be $261,196 and timely filed this suit.

## ANALYSIS

### *Presumption of Correctness and Burden of Proof*

"The burden and the presumption, which are for the most part but the opposite sides of a single coin, combine to require the taxpayer always to prove by the preponderance of the evidence the Commissioner's determination was erroneous." *See United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Bar L Ranch, Inc. v. Phinney,* 426 F.2d 995 (5th Cir.1970); *Higginbotham v. United States,* 556 F.2d 1173 (4th Cir.1977). This burden applies whether the proceedings are in a Tax Court for redetermination of a deficiency or in a District Court upon a refund claim or a government counterclaim. *See Bar L Ranch, Inc., supra,* 426 F.2d at 998. Furthermore, in a refund suit, the taxpayer also bears the burden of proving the correct amount of the refund he/she is entitled to. *Portillo v. Comm'r of Internal Revenue,* 932 F.2d 1128, 1133 (5th Cir.1991). Thus, the Plaintiffs assert the correctness of tax liability is not entitled to a presumption of correctness because there is no ruling by the Commissioner. This assertion is incorrect. The plaintiffs clearly have the burden of proof and the burden has not been met.

### *"Add-on" Minimum Tax and Alternative Minimum Tax*

The case at bar deals with the Alternative Minimum Tax and not with the "add-on" minimum tax, because the income tax refund in issue falls in the calendar year of 1984. In 1982, Congress repealed the "add-on" minimum tax for non-corporate taxpay-

ers and replaced it with the Alternative Minimum Tax (hereinafter "AMT") provision through the Tax Equity and Fiscal Responsibility Act of 1982 (hereinafter "TEFRA"). *United States v. Deckelbaum,* 784 F.Supp. 1206, 1208 (D.Md. Jan. 14, 1992). *First Chicago Corp. v. Comm'r,* 88 T.C. 663 (1987), *aff'd,* 842 F.2d 180 (7th Cir.1988) and *Occidental Petroleum v. Comm'r,* 82 T.C. 819 (1984), which Plaintiffs rely upon, are inapplicable because these cases were decided before the changes in 1982 (TEFRA). Furthermore, *First Chicago Corp.* and *Occidental Petroleum* deal with "add-on" minimum tax while the case at bar deals with AMT.

The plaintiffs' basic argument is there should be no imposition of minimum tax on tax preference items which produce no benefit. The plaintiffs claim they paid minimum tax on tax preference items on which they did not receive any benefit in 1984. The plaintiffs further state the Internal Revenue Code § 58(h) was enacted to provide relief from this type of tax trap and a refund is the appropriate remedy. The plaintiffs are relying on *First Chicago Corp. v. Comm'r,* 88 T.C. 663 (1987), *aff'd,* 842 F.2d 180 (7th Cir.1988) to support their argument.

*First Chicago Corp.* involves a situation where the taxpayer had minimum tax preference which resulted in the reduction of taxable income in 1980 and 1981. The taxpayer had sufficient foreign tax credits to reduce the regular tax to zero, even if there were no preferences to reduce taxable income. As a result of the preference, foreign tax credits were "freed-up" to be carried over to other tax years. The issue in *First Chicago Corp.* was whether the taxpayer should be liable for the minimum tax on the preference in the year the preference arose. The holding of *First Chicago Corp.* states "there is no minimum tax on tax preference items until they confer actual benefit on the taxpayer." *First Chicago Corp.,* 842 F.2d at 180. However, the holding dealt with "add-on" minimum tax and not with AMT. *Id.*

The plaintiffs also used *Occidental Petroleum v. Comm'r,* 82 T.C. 819 (1984) to support their argument. The facts in *Occidental Petroleum* are similar to those in *First Chicago Corp.,* except the freed-up foreign tax credits had expired unused. Further, *Occidental Petroleum,* is also a pre-TEFRA "add-on" minimum tax case. The Court held the taxpayer was not liable for minimum tax on the preference because the taxpayer never received a tax benefit from them.

The plaintiffs' argument tends to suggest they want "add-on" minimum tax and not the AMT because they want to decrease their total tax liability by not claiming all of their tax preference items. Under "add-on" minimum tax, the taxpayer can avoid payment of the "add-on" minimum tax by simply not claiming the items of tax preference, because the minimum tax base which existed before 1983 was simply the sum of a taxpayer's tax preference. If the taxpayer had no preference, then there was no minimum tax base and no minimum tax liability.

Preference is merely an item which Congress saw fit to allow as a deduction in arriving at Adjusted Gross Income. But Congress also mandated the preference must be added back to Adjusted Gross Income for purpose of calculating a taxpayers AMT. *United States v. Deckelbaum,* 784 F.Supp. at 1209. Under AMT however, the taxpayer cannot avoid payment. *Id.* at 1208. Non-corporate taxpayers were required to complete their regular income tax and their Tentative AMT and pay whichever amount was greater. *Id.* The difference between the Tentative AMT and the regular income tax was assessed as the AMT. *Id.*

The issue at bar has already been decided in *Deckelbaum.* *Deckelbaum* was Post–TEFRA. The year in issue in *Deckelbaum* was 1985 which is another year in which AMT was applicable. In *Deckelbaum,* the issue of the case was whether the holding in *Occidental Petroleum* and *First Chicago* should be extended to cases involving the AMT? The Court found it should not, for three reasons. The first reason is the legislative History of TEFRA—Congress enacted AMT to ensure

that a taxpayer with a significant level of economic income could not avoid all tax liability on income by any means:

> The committee has amended the present minimum tax provisions applying to individuals with one overriding objective, no taxpayer with substantial economic income should be able to avoid all tax liability by using exclusions, deductions, and credits. (emphasis supplied).

S.Rep. No. 494, 97th Cong., 2d Sess. 108 (1982), reprinted in 1982 U.S.C.C.A.N. 781, 876.

The second reason provided by the Court was the difference in calculation of "add-on" minimum tax and AMT. "Add-on" minimum tax is computed on a tax base consisting of the sum of a taxpayer's tax preference less an applicable minimum tax deduction. Then the minimum tax is added on to the taxpayer's regular tax in order to determine his total income tax liability. *United States v. Deckelbaum*, 784 F.Supp. at 1208. A taxpayer's alternative taxable income was his Adjusted Gross Income for regular income purposes plus certain statutory additions called "Tax Preference Item." *Id.* This computation yields a result called Tentative AMT. Non-corporate taxpayers were required to compute their regular income tax and their Tentative AMT and pay whichever amount was greater. *Id.* The difference between the Tentative AMT and the regular income tax was assessed as the AMT. *Id.* Thirdly, the Court stated § 58(h) is not incomprehensible. Under the AMT provision, the treatment of tax preference does not reduce a taxpayer's income tax liability because tax preference items are effectively not deducted in calculating the AMT income upon which the AMT is computed. *Id.* Adjustment of items of tax preference is required only "where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's tax under this subtitle ..." *Id.* The "subtitle" referred to is the entirety of subtitle A—the subtitle imposing income tax liability. *Id.* Thus, the court reasoned this analysis is consistent with the purpose stated in legislative history. *Id.* at 1209.

In *Weiser v. United States*, 746 F.Supp. 958 (N.D.Cal.1990), *aff'd*, 959 F.2d 146 (9th Cir.1992), the plaintiffs made an argument against taxation on preference items for which they received no benefit under the regular tax provisions. This is the same argument asserted by the Plaintiffs in the case at bar. The plaintiffs in *Weiser* had sufficient preference items to reduce their regular taxable income to a negative. The plaintiffs subtracted this amount from their AMT income claiming they had received no tax benefit. The plaintiffs suggested since this portion did not generate any reduction in regular tax, it should be subtracted from AMT income. The Court replied by stating "the items of tax preference items are not taxed, they are simply disallowed as deductions from Adjusted Gross Income (AGI) under AMT." *Weiser v. United States*, 959 F.2d 146, 147 (9th Cir. (Cal.)). Furthermore, whether or not they generated a tax benefit under the regular code provision is immaterial, since Congress made a policy decision that taxpayers cannot exclude these items from adjusted income when the AMT is calculated. *Id.*

Another argument made in *Weiser*, is that since no benefit occurs from certain below-the-line deductions under the regular tax provisions, it is unfair to disallow these deductions under AMT. The Court reasoned:

> Section 55 set forth a hermetic structure for calculating the AMT, and thus § 58(h) could not be applied to alter the scheme. Since § 55 calculated the taxpayer's AMT liability by starting with Adjusted Gross Income the district court found that AMT provided taxpayers with a 'built-in tax benefit rule.'

*See Weiser v. United States*, 746 F.Supp. 958, 963–64 (N.D.Cal.1990). Thus the Court reasoned, allowing Taxpayers the benefit of § 58(h) would permit them to double count their deductions. *Weiser*, 959 F.2d at 148. The Court then looked at legislative history and found Congress discovered some individuals were able to make use of existing deductions in a manner allowing them to use no, or a shockingly low, portion of their income for payment

of taxes. *Id. See First Chicago Corp.* As a result, it created the AMT to ameliorate this situation. *Id.* at 148.

The plaintiffs attempt to reduce their tax preference by those preferences the plaintiffs claim did not provide a benefit in 1984. This is not supported by case law, statutes, or legislative history. In the case at bar, the plaintiffs did obtain a regular tax benefit from the depletion deduction because it reduced their regular taxable income. *Weiser* found, and this Court agrees, § 58(h) of the Internal Revenue Code "[is] inapplicable to individuals whose tax liability is calculated under AMT." *Weiser*, 959 F.2d at 147. Accordingly,

IT IS ORDERED Defendant's Motion for Summary Judgment is GRANTED.