United States Court of Appeals,

Fifth Circuit.

No. 94-40382.

CONOCO, INC. and Affiliated Corporations, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Jan. 27, 1995.

Appeal from a decision of the United States Tax Court.

Before WHITE, Associate Justice (Ret.),[1] BARKSDALE and PARKER, Circuit Judges.

PER CURIAM:

At issue is whether the suspended tax method of Treasury Regulation § 1.58-9 for the minimum tax in effect for corporate taxpayers from 1969 to 1986 is a permissible interpretation of 26 U.S.C. (I.R.C.) § 58(h) (adjustment of tax preference items that do not cause a tax benefit for the taxable year in which they arose). We AFFIRM.

I.

For 1969 to 1986 (for corporate taxpayers; only to 1982 for noncorporate), I.R.C. § 56(a)[2] imposed a "minimum tax" on tax preference items.[3] This tax was added on to the regular income tax. The rationale for the minimum tax was that many taxpayers

---

[1]Associate Justice of the United States Supreme Court (Ret.), sitting by designation.

[2]The relevant law was changed significantly by the Tax Reform Act of 1986. All references are to the 1982 version of the Internal Revenue Code.

[3]See I.R.C. § 57 (listing items of tax preference).

1

were able to offset all, or almost all, tax liability through the use of certain tax preference items, such as long term capital gains and accelerated depreciation. *See First Chicago Corp. v. Commissioner,* 842 F.2d 180, 181 (7th Cir.1988) (noting purpose of minimum tax). For corporate taxpayers, the minimum tax equaled 15 percent of the amount by which preference items exceeded the greater of $10,000 or its regular tax liability (as adjusted for certain credits). I.R.C. § 56(a), (c).

Despite having to pay the minimum tax, however, a taxpayer could realize no benefit from the preference items for that tax year. This would occur, for instance, if the taxpayer had tax credits which reduced regular tax liability to zero.[4] Responding to this, Congress enacted I.R.C. § 58(h) in 1976; it provided:

> *Regulations to Include Tax Benefit Rule.* The Secretary shall prescribe regulations under which items of tax preference shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's tax under this subtitle for any taxable years.

A clear purpose of § 58(h) was to preclude imposition of the minimum tax for a tax year when preference items did not provide a tax benefit (nonbenefit year). *See First Chicago Corp.,* 842 F.2d at 180; *Occidental Petroleum Corp. v. Commissioner,* 82 T.C. 819, 1984 WL 15576 (1984). Concomitantly, there arose the necessity for a method for a tax adjustment when preference items gave rise to a benefit in a tax year other than the nonbenefit year in which the preference items arose. The benefit could occur as follows: tax

---

[4]*See* H.R.Rep. No. 10612, 94th Cong., 2d Sess. 106-07 (1976) (explaining situations wherein no benefit is realized from preference items).

credits offset tax liability; the preference items deduction does so as well; the amount of tax credits necessary to offset liability are thereby reduced; and these "freed-up" credits can be used to offset tax in other years (benefit year). Therefore, if the freed-up credits are so utilized, a tax benefit results for the benefit year from the preference items from the nonbenefit year.

The Secretary delayed 13 years in promulgating regulations under § 58(h); Temporary Treasury Regulation § 1.58-9T was issued in 1989 (it became final three years later).[5] Under the Regulation, no minimum tax was imposed for a nonbenefit year (preference items did not provide current tax benefit). On the other hand, when preference items from a nonbenefit year gave rise to a benefit in another year (such as when "freed up" tax credits were used to offset taxes in another year (benefit year)), the Regulation established, in effect, a "suspended tax": prescribed minimum tax is calculated for the nonbenefit year and "suspended" until the benefit year, with the amount of freed-up tax credits to be used in the benefit year being reduced in an amount equal to the amount of the suspended tax.[6]

---

[5]Section 58(h) was repealed by the Tax Reform Act of 1986. Both § 58(h) and Regulation § 1.58-9 are applicable only to tax years 1977 through 1986.

[6]For calculating the suspended tax to be offset against the freed-up credits, the Regulation provided in pertinent part:

> (c) *Adjustment of carryover credits—(1) In general.* A taxpayer's freed-up credits must be reduced by the additional minimum tax that would have been imposed if a current tax benefit had been derived from preference items that did not actually produce a current tax benefit. The amount of this reduction

3

E.I. du Pont de Nemours & Co. filed a consolidated tax return for 1982 for itself and its affiliates, Conoco, Inc., New England Nuclear Corporation (NEN), and Remington Arms Company, Inc. (the DuPont Group). The DuPont Group's 1982 return listed a tax liability of $256,844,566, representing a $338,302,426 potential tax liability reduced by a $81,457,860 preference items deduction.[7] This liability was offset fully by tax credits available to the DuPont Group for that tax year.[8] Indeed, the tax credits were so plentiful that, even absent the preference items deduction, the credits would have still offset the entire tax liability.

shall be calculated in the following manner—

> (i) Determine the amount of freed-up credits;

> (ii) Determine the amount of tax preference items (if any) from which a current tax benefit was derived for the taxable year ("beneficial preferences"), and the amount of preferences from which no current tax benefit was derived for the taxable year ("non-beneficial preferences"); and

> (iii) Determine the portion of the total minimum tax on all tax preference items for the taxable year that is attributable to the non-beneficial preferences.

> The freed-up credits are then reduced by an amount equal to such portion of the minimum tax.

Treas.Reg. § 1.58-9(c)(1) (1992).

[7]The DuPont Group's preference items for 1982 totalled $177,082,305, which allowed a $81,457,860 preference items deduction (preference items multiplied by the 46 percent marginal tax rate (I.R.C. § 11(b)(5))).

[8]The DuPont Group's tax liability for 1982 was only $5,626,409 for recapture of investment tax credits, the liability for which cannot be offset by available tax credits. Its regular tax deduction for minimum tax computation for 1982 was $6,194,754 (sum of the foregoing recapture and net TRASOP credits of $568,345).

Therefore, the DuPont Group realized no tax benefit from its preference items for 1982, and, as a result, no minimum tax was imposed for that year.

The DuPont Group did benefit, however, from the preference items from 1982. By reducing its tax liability for 1982 with the preference items, it required fewer tax credits to offset its 1982 income. These freed-up credits were carried back to offset tax for prior years. (For those years, the DuPont Group members did not have a consolidated return.) Conoco carried back its portion of the tax credits to offset tax from taxable year 1980. Therefore, although Conoco realized no tax benefit from the 1982 preference items for 1982, it did realize a benefit from them for 1980.

Accordingly, in 1991, pursuant to Regulation § 1.58-9 (the Regulation), the Commissioner claimed a tax deficiency of $12,436,199 against Conoco for 1980. Deficiencies were also claimed against the other members of the DuPont Group.

Each member of the DuPont Group appealed the deficiency to the Tax Court, which consolidated the four cases and upheld the Regulation. *E.I. Du Pont De Nemours & Co. v. Commissioner,* 102 T.C. 1, 1994 WL 9930 (1994). Conoco appealed to this court; the remainder of the DuPont Group, to the Third Circuit, which upheld the Regulation. *E.I. Du Pont De Nemours & Co. v. Commissioner,* 41 F.3d 130 (3d Cir.1994).

## II.

Conoco does not dispute that it has tax liability resulting from the benefit that it received for 1980 from the 1982 preference

5

items.  At issue is only whether the Regulation established a permissible method for computing that liability.  "[L]egislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."[9]  *Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

Conoco claims, on three bases, that the Regulation is an impermissible interpretation of I.R.C. § 58(h).  As noted, the Third Circuit affirmed the decision of the Tax Court at issue here.  The same claims as are presented here by Conoco were presented to, and rejected by, the Third Circuit in holding that the Regulation is a reasonable interpretation of § 58(h).[10]  Its opinion is extremely thorough and well-reasoned;  accordingly, no benefit will be derived from engaging here in the painstaking analysis employed there.  *See, e.g., Wendland v. Commissioner,* 739 F.2d 580, 582 (11th Cir.1984) (adopting analysis of Ninth Circuit in identical appeal from same Tax Court decision).

First, and primarily, Conoco contends that the Regulation is inconsistent with both the plain language and the intent of § 58(h).  Conoco asserts that the Regulation, by calculating and suspending a tax for the nonbenefit year, does not "adjust

---

[9]Conoco contends that the Regulation is "interpretative" rather than "legislative", thus, entitled to less deference.  We disagree.  *See Du Pont,* 41 F.3d at 134-35.

[10]Understandably, counsel were the same in the Third Circuit as in the appeal to our court.  Moreover, the four cases, including for Conoco, were presented to the Tax Court on fully stipulated facts.

preferences" as directed by § 58(h).[11]  As the Third Circuit noted, however, this criticism, which is not explicitly supported by the legislative history, does not demonstrate that the Regulation is an unreasonable interpretation of the statute.  *Du Pont,* 41 F.3d at 135-36.

Second, Conoco claims that the Regulation ignores the language and intent of § 58(h), and therefore disrupts the balance between the regular tax and the minimum tax by essentially computing a tax in the nonbenefit year and imposing that tax as a "regular tax" in the benefit year.  In support, Conoco notes various Internal Revenue Code provisions with which the Regulation supposedly interferes.  The Third Circuit found only minimal interference with other portions of the Code, and also noted that such interference is not authoritatively prohibited.  *Id.* at 137-38.

Finally, Conoco contends that the Regulation is not entitled to the deference usually afforded to Treasury Regulations because, among other things, the Regulation was allegedly promulgated in bad faith.  Once again, we agree with the Third Circuit that the Regulation is entitled to the usual deference.  *Id.* at 138-40.

### III.

In sum, for the reasons set forth in the opinion by the Third

---

[11]Conoco offers an alternative method for calculating the tax.  Rather than calculating a tax for the nonbenefit year and offsetting it against the potential freed-up credits, Conoco's method bases its calculation on the benefit year, using the sum of preference items for the benefit and nonbenefit years.  As the Third Circuit stated:  "Although taxpayers' proposal appears to be reasonable, it is not the only permissible construction of the statute, nor is it necessarily the most reasonable one."  *Du Pont,* 41 F.3d at 136.

Circuit, Treasury Regulation § 1.58-9 is a reasonable construction of § 58(h).  Accordingly, the decision of the tax court is

AFFIRMED.