108 T.C. No. 2

UNITED STATES TAX COURT

ROY E. AND LINDA DAY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20732-94.                    Filed January 9, 1997.


R determined deficiencies in Ps' Federal income
tax for the years 1988 through 1990.  Ps seek to
augment the amount of sec. 29, I.R.C., nonconventional
fuel source credits they may take against regular
income tax by increasing the availability of such
credits under the sec. 29(b)(5), I.R.C., limitation.
Ps argue that if their taxable income in each year had
not been reduced by tax preference items, the resulting
tax payable on that income would nonetheless have been
the same due to sec. 29, I.R.C., credits generated in
these years.  R contends that relief under the sec.
59(g), I.R.C., tax benefit rule is not warranted.  The
preferences, by reducing Ps' taxable income, allowed an
increased amount of sec. 29, I.R.C., credits to go
unused in the years generated and thereby increased the
sec. 29, I.R.C., credits available to be carried over
indefinitely pursuant to sec. 53, I.R.C.  Held:  Ps are
not entitled to use the sec. 59(g), I.R.C., tax benefit
rule to reduce their tentative minimum tax in order to

increase the sec. 29, I.R.C., credits available under the sec. 29(b)(5), I.R.C., limitation. <u>First Chicago Corp. v. Commissioner</u>, 88 T.C. 663 (1987), affd. 842 F.2d 180, 181 (7th Cir. 1988), distinguished.

<u>Marcia Allen Broughton</u>, for petitioners.

<u>Michael A. Yost, Jr.</u>, for respondent.


OPINION

NIMS, <u>Judge</u>:[*]  Respondent determined deficiencies in Roy E. and Linda Day's (petitioners or the Days) Federal income tax for the taxable years 1988, 1989, and 1990 in the amounts of $6,791, $14,825, and $10,127, respectively.  The only issue for decision is whether petitioners can utilize section 59(g) to compute their tentative minimum taxable income, thereby increasing the extent to which they can apply qualified section 29 credits against their regular income tax for the taxable years 1988 through 1990. For the reasons that follow, we hold that they cannot.

For ready reference, the following acronyms are used throughout this Opinion:

        TMT- tentative minimum tax
        TMTI- tentative minimum taxable income
        RIT- regular income tax
        AMT- alternative minimum tax
        AMTI- alternative minimum taxable income

---

[*]This case was reassigned to Judge Arthur L. Nims, III, by Order of the Chief Judge.

All section references, unless otherwise specified, are to sections of the Internal Revenue Code in effect for the years at issue. Statutory provisions applicable to the years in issue are reproduced in the Appendix.

All of the facts have been stipulated. The Court finds these facts. This reference incorporates the stipulation of facts and attached exhibits. Petitioners were married and resided in Morgantown, West Virginia, when they filed their petition.

Respondent determined deficiencies in petitioners' Federal income tax for 1988, 1989, and 1990, in the amounts of $6,791, $14,825, and $10,127, respectively.

Petitioners invested in oil- and gas-producing properties, the production from which qualified for section 29 nonconventional fuel source credits of $12,706 in 1988, $14,210 in 1989, and $14,729 in 1990. Petitioners had depletion, intangible drilling costs, accelerated depreciation, and adjustments in 1988, 1989, and 1990 totaling $37,910, $76,329, and $70,502, respectively. These amounts were added to petitioners' taxable income to calculate their AMTI.

Petitioners' 1988 taxable income as determined by respondent was $115,374, and their RIT as so determined was $30,611. Respondent also determined self-employment tax to be $5,859 for the taxable year 1988. The Days had no AMT liability for 1988. For 1989, petitioners' taxable income as determined by respondent

was $128,054, with RIT liability of $34,492 and AMT liability of $2,884. Respondent also determined petitioners' liability for self-employment tax to be $6,250 for the taxable year 1989. Petitioners' 1990 taxable income as determined by respondent was $101,547, and their RIT as so determined was $25,372. Petitioners' liability for the AMT was $3,465. Respondent also determined petitioners' self-employment tax to be $7,849 for the taxable year 1990.

For 1988, $6,649 of the qualified section 29 credit of $12,706 was allowed by respondent. No section 29 credit was allowed for either 1989 or 1990. An unused section 29 credit of $6,057 from 1988 was carried over to 1989 pursuant to the section 53 minimum tax credit. See sec. 53(d)(1)(B)(iii). The 1988 credit, along with an unused section 29 credit of $14,210 and AMT of $2,884 from 1989, was subsequently carried forward to 1990 to produce a minimum tax credit of $23,151. In 1990, none of petitioners' $14,729 section 29 credit was allowed, resulting in a minimum tax credit carryover of $37,880.

In their petition, the Days do not dispute any of the adjustments to taxable income set forth in the statutory notice of deficiency. The adjustments to income to which the petitioners have not assigned error or otherwise placed at issue in the petition total $7,520 for 1988; $12,200 for 1989; and $70,456 for 1990. Petitioners instead seek tax relief under section 59(g) by excluding from AMTI tax preferences and

adjustments which they allege do not provide a tax benefit, in order to increase the section 29 credits they can use against RIT for each year in issue.

Section 29(b)(5) (renumbered 29(b)(6) for tax years beginning after December 31, 1990) limits the section 29 nonconventional fuel source credit available in any year against RIT to the excess of a taxpayer's RIT (reduced by credits allowable under sections 27 and 28) over the TMT for that year.

The complicated interplay between section 29, the AMT, and the tax benefit rule spawns the case before us. In order to readily understand the arguments of the parties in this matter, we must first examine the history and function of both the minimum tax and the tax benefit rule.

A.  The Minimum Tax

Since 1969, the Internal Revenue Code has included minimum tax provisions for both corporate and individual taxpayers. Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487. Congress enacted the minimum tax to prevent corporate and individual taxpayers from aggregating deductions to the point where they pay either no tax or a "shockingly low" tax. First Chicago Corp. v. Commissioner, 842 F.2d 180, 181 (7th Cir. 1988), affg. 88 T.C. 663 (1987). Deductions which might otherwise result in this outcome are classified as "tax preference items."

Section 301 of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 580, imposed a minimum tax on certain tax preference

items to be added on to a taxpayer's other tax liability.  This scheme remained in effect, with only minor changes, as the only minimum tax formulation in the Internal Revenue Code until 1978. See Revenue Act of 1978, Pub. L. 95-600, sec. 421(a), 92 Stat. 2871.

The Revenue Act of 1978, purported to repeal the add-on minimum tax for individuals and replace it with a new AMT formulation beginning in 1979.  Other sources indicate, however, that the two provisions co-existed in the Internal Revenue Code until the add-on minimum tax was finally repealed by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 201(a), 96 Stat. 411, and supplanted by an amended alternative minimum tax.  E.I. du Pont de Nemours & Co. v. Commissioner, 102 T.C. 1, 18 n.10, affd. 41 F.3d 130 (3d Cir. 1994), affd. sub nom. Conoco, Inc. v. Commissioner, 42 F.3d 972 (5th Cir. 1995); United States v. Deckelbaum, 784 F. Supp. 1206, 1208 (D. Md. 1992).  This TEFRA AMT provision remained in effect from 1982 until its amendment by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, which expanded the AMT for individuals.  See S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 515, 521.

The post-1986 AMT rules, sections 55-59, were enacted to achieve one overriding objective:  to establish a floor for tax liability, so that a taxpayer pays some tax regardless of the tax breaks otherwise available to him under the RIT.  See S. Rept.

99-313, supra, 1986-3 C.B. (Vol. 3) at 518.  The AMT rules accomplish this goal by eliminating favorable treatment to certain items that are treated favorably for purposes of the RIT (tax preference items).  Secs. 55(b)(2)(B), 57(a).

The AMT is paid only if, and to the extent that, it exceeds the taxpayer's RIT.  Sec. 55(a).  The starting point in computing AMT liability is determining AMTI.  AMTI is computed in the same manner as regular taxable income except that the adjustments provided in sections 56 and 58 are taken into account for AMTI, and the tax preference items set forth in section 57 are not permitted to reduce AMTI.  Sec. 55(b)(2).  To determine the taxable amount of AMTI, AMTI is reduced by an exemption amount, which, in the instant case, amounts to $40,000, subject to a gradual phase-out as AMTI exceeds $150,000.  Sec. 55(d).  The AMT rate is then applied to AMTI, as reduced by the exemption amount. Sec. 55(b).  For the taxable years at issue in the instant case, the applicable AMT rate is 21 percent.  The resulting tax figure is then reduced by the alternative minimum foreign tax credit (which petitioners did not have in any of the taxable years at issue) to arrive at TMT.  Sec. 55(b)(1)(A).

Next, RIT is compared to TMT.  RIT is not reduced by any nonrefundable credits, other than the foreign tax credit and the possessions tax credit, before being compared to the TMT.  Sec. 55(c)(1).  If TMT is greater than the RIT, the TMT is the final tax liability for the taxable year.  Sec. 55(a).  If, on the

other hand, RIT exceeds the TMT, nonrefundable credits (including the section 29(a) nonconventional fuel source credit) are applied in a set order to reduce the RIT, but not below the TMT for the taxable year. See, e.g., sec. 29(b)(5).

Finally, the section 53 minimum tax credit is applied against the RIT, but again only to the extent that the RIT exceeds the TMT. Sec. 53(c). Pursuant to section 53(d)(1)(B)(iii), the amount available for the minimum tax credit is increased by any section 29 credits not allowed solely by reason of the limitation of section 29(b)(5). The section 53 minimum tax credit can be carried forward indefinitely to subsequent taxable years and utilized to reduce regular tax to the extent it exceeds TMT in those years. Sec. 53(a), (c).

B. The Tax Benefit Rule

Presumably since Congress recognized that it could not envision all of the possible inequities of the minimum tax, it incorporated section 58(h), which provided a so-called Tax Benefit Rule, as part of the add-on minimum tax system in 1976. Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1553. The section 58(h) tax benefit rule mandated that the Secretary of the Treasury

> prescribe regulations under which items of tax
> preference shall be properly adjusted where the tax
> treatment giving rise to such items will not result in
> the reduction of the taxpayer's tax under this subtitle
> for any taxable years.

Although section 58(h) was added to the Code at a time when the only minimum tax in the Code was the add-on rather than the AMT, it survived the transition between the two types of minimum tax that occurred in 1982 post-TEFRA.

That Congress affirmatively chose to retain the tax benefit rule in the wake of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, is demonstrated by the fact that the provision was renumbered as section 59(g) and its language slightly changed. Nevertheless, there are substantive differences between former section 58(h) and current section 59(g). Effective for taxable years after 1986, section 59(g), as amended by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, provides as follows:

> The Secretary may prescribe regulations under which differently treated items shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's regular tax for the taxable year for which the item is taken into account or for any other taxable year. [Emphasis added.]

The substitution of the word "may" for "shall" in section 59(g) renders the tax benefit rule discretionary. (In First Chicago Corp. v. Commissioner, 88 T.C. 663, 676 n.11 (1987), affd. 842 F.2d 180 (7th Cir. 1988), we drew attention to the word change in section 59(g), but noted that it did not affect the outcome of that case since the change did not apply to the tax years before the Court.) Moreover, whereas section 58(h) was concerned with the effect of preferences on a taxpayer's income

tax liability, section 59(g) focuses on the narrower effect of preferences and adjustments on a taxpayer's regular tax liability.  The legislative history surrounding retention of the tax benefit rule indicates that Congress indeed intended to constrain its application, to wit:

> It is clarified that the application of the tax benefit rule to the minimum tax is within the discretion of the Secretary of the Treasury.  Since the regular and minimum taxes generally are computed separately, <u>relief from the minimum tax under the tax benefit rule is not appropriate solely by reason of the fact that a taxpayer has received no benefit under the regular tax with respect to a particular item</u>.  * * * [H. Conf. Rept. 99-841, 1986-3 C.B. (Vol. 4) 262-263; emphasis added.]

As further evidence of the limited scope of section 59(g), the legislative history states, without mentioning the tax benefit rule, that "Credits that cannot be used by the taxpayer due to the effect of the alternative minimum tax can be carried over to other taxable years under the rules generally applying to credit carryovers."  S. Rept. 99-313, <u>supra</u>, 1986-3 C.B. at 522.

We now apply the foregoing principles to the facts before us.

For the taxable years 1988 through 1990, petitioners were entitled to certain section 29(a) nonconventional fuel source credits.  However, due to the section 29(b)(5) limitation, only a small portion of their qualified section 29 credits could be used in the taxable years 1988 through 1990.

To increase their permissible section 29 credit limitation, petitioners assert that for the years 1988 through 1990 they did not garner any tax benefits against RIT from certain tax preference items and adjustments.  Rather, petitioners posit that sufficient section 29 credits would have enabled them to have the same RIT liability in the absence of the preferences and adjustments.  Simply put, petitioners seek to avoid adding back tax preference items to AMTI for which they allegedly received no tax benefit against RIT in computing the limitation on section 29 credits they may take against RIT.

Respondent contends, on the other hand, that relief under section 59(g) is not warranted simply because petitioners received no current regular tax benefit with respect to preferences, deductions, and/or credits.

We hold that the application of the section 59(g) tax benefit rule is inappropriate in petitioners' case for the following reasons:  (1) The AMT limits the use of nonrefundable credits as well as preferences and exclusions; (2) the disallowed section 29 credits may be carried forward indefinitely to future taxable years under section 53; (3) significant differences exist between the AMT and the add-on minimum tax; and (4) petitioners did in fact receive a current tax benefit against RIT from their tax preference items.

1.  The AMT Limits the Use of Nonrefundable Credits as Well as Preferences and Exclusions

Petitioners would recompute AMTI by excluding certain preferences that are not otherwise deductible from AMTI. If successful, petitioners would lower their TMT and thereby augment the availability of section 29 credits under the section 29(b)(5) limitation. In effect, petitioners would increase the spread between RIT and TMT. Thus, petitioners seek to do, indirectly, that which the Code does not allow directly: apply nonrefundable credits against TMT. See S. Rept. 99-313, supra, 1986-3 C.B. at 537.

If section 59(g) applied in the manner petitioners advocate, taxpayers with sufficient amounts of nonrefundable credits as well as adjustments and/or preferences would be able to completely avoid Federal income tax liability, despite having large economic incomes. Respondent's brief offers a useful illustration of how petitioners' position skirts Congress' intent in enacting the AMT. See First Chicago Corp. v. Commissioner, 842 F.2d at 181.

Suppose that for 1990 a taxpayer, with no foreign tax credits, had $1 million of gross income and $1 million of preferential deductions. Although the taxpayer would have no RIT liability, the taxpayer would have AMT liability because preferential deductions are not allowable in computing minimum taxable income. But if the taxpayer also had sufficient nonrefundable credits to completely eliminate regular tax liability on $1 million of gross income, under petitioners'

theory, none of the $1 million of preferences would be added back to taxable income in computing AMTI.  Thus, the taxpayer would completely avoid Federal income tax liability, despite having an economic income of $1 million.

That petitioners seek to avoid less tax than is hypothetically possible under their theory as shown by the preceding scenario does not bolster their tenuous position.  See United States v. Deckelbaum, 784 F. Supp. at 1207.

2. Section 53 Permits an Indefinite Carryover of Disallowed Section 29 Credits to Future Taxable Years

The putative use of the section 59(g) tax benefit rule is also inappropriate due to the availability of the section 53 minimum tax credit.  Congress recognized that taxpayers may not be able to use currently all of their section 29 credits because of the section 29(b)(5) limitation and therefore allowed the indefinite carryover of these credits under section 53.  Sec. 53(a).

Section 59(g) was added to the Code to give the Secretary the flexibility to provide relief in the event a taxpayer would not get a reduction in regular tax liability from an item that was includable in the AMT base.  Section 59(g) explicitly authorizes relief only where an item "will not result in the reduction of the taxpayer's regular tax for the taxable year for which the item is taken into account or for any other taxable year." (Emphasis added.)  In the instant case, however,

petitioners may obtain a tax benefit from their tax preference items indirectly, through "liberated" section 29 credits that can be applied against RIT in future taxable years pursuant to section 53.

Petitioners argue that the fact that they may, at some future time, indirectly derive a tax benefit from the tax preference items via the freed-up section 29 credits is mooted by First Chicago Corp. v. Commissioner, 842 F.2d 180 (7th Cir. 1988).

In First Chicago Corp., the taxpayer had no regular tax liability for 1980 and 1981 in large part due to a plethora of foreign tax credits. Id. at 180-181. The credits were sufficient to offset in full the tax liability that would have resulted if the taxpayer's regular income had not also been reduced by preference items. Id. Thus, the taxpayer received no current tax benefit from the preferences. Id. at 181. Moreover, the excess credits liberated by the preferences had not yet expired unused. Id.

Respondent argued that the add-on minimum tax should nevertheless be imposed for 1980 and 1981 because of the potential for tax reduction in subsequent years. However, this Court, as well as the Court of Appeals for the Seventh Circuit, was concerned that if the taxpayer paid tax on a preference item for a year in which it derived no benefit due to the existence of credits, and those credits later expired unused, the statute of

limitations on refunds could bar recovery by the taxpayer of the extra tax it had paid in the earlier year.  Id. at 182-183; First Chicago Corp. v. Commissioner, 88 T.C. at 672-673.  This Court held that "no minimum tax is due * * * for the years in which the then useless preferences arose, but * * * the tax is best imposed only when, and only to the extent that, petitioner realizes tax benefits generated by the preferences."  First Chicago Corp. v. Commissioner, 88 T.C. at 668.

First Chicago Corp. is readily distinguishable from the instant case; perhaps most saliently, section 29(b)(5) played no role whatsoever in the decision therein.

3.  The AMT Differs Markedly From the Add-on Minimum Tax

In their misplaced reliance on First Chicago Corp., petitioners also ignore the substantial differences between the add-on minimum tax at issue in that case and the AMT at issue in the instant case.  In First Chicago Corp. itself this Court stated: "The 'minimum tax' is to be sharply distinguished from the 'alternative minimum tax'".  First Chicago Corp. v. Commissioner, 88 T.C. at 668 n.5.  These differences overshadow any similarities, and render the principles set forth in First Chicago Corp. inapplicable to the matter before us.  See United States v. Deckelbaum, 784 F. Supp. at 1208.

The District Court in Deckelbaum expressly declined to extend the holding of First Chicago Corp. to cases involving the AMT.  United States v. Deckelbaum, 784 F. Supp. at 1208.  The

issue was whether the taxpayers could adjust certain tax preference items downward to determine the amount of AMT they owed for 1985 under section 58(h). The taxpayers' revised computation of tax, although consonant with the taxpayers' approach in First Chicago Corp., was rejected as directly contrary to the stated goal of the AMT. Id. In Deckelbaum, because the taxpayer could not avoid AMT even in the absence of any preferences, and because nonrefundable credits could not be used to reduce AMT, the court held that a reduction of AMT under then-section 58(h) because of excess nonrefundable credits was not warranted. Id. at 1209.

In so holding, Deckelbaum clarified the important distinction in the methods by which the add-on minimum tax and the AMT are calculated. Id. at 1208. The add-on minimum tax was computed on a tax base consisting of the sum of a taxpayer's tax preferences less an applicable minimum tax deduction. The minimum tax was then added to the taxpayer's RIT in order to determine his total income tax liability. Thus, a taxpayer who reported items of tax preference but who, irrespective of such items, would have owed no tax because of the availability of credits, subjected himself to tax liability under the add-on tax provisions solely by virtue of the fact that he reported the tax preference items. Stated otherwise, the taxpayer in such a case theoretically could have avoided payment of the add-on minimum tax by simply not claiming the items of tax preference.

First Chicago Corp. resolved this anomaly by holding that if a taxpayer did report such items, and they resulted in no immediate tax benefit, they would not increase the add-on minimum tax for that year. First Chicago Corp. v. Commissioner, 842 F.2d at 183. No such anomaly is present in cases involving the AMT. In contrast to the add-on minimum tax at issue in First Chicago Corp., a taxpayer cannot avoid AMT liability simply by failing to claim preferences.

There is another important distinction between First Chicago Corp., which involved section 58(h), and the instant case. Whereas section 58(h) was mandatory even in the absence of implementing regulations, the application of section 59(g) lies at the discretion of the Secretary. See First Chicago Corp. v. Commissioner, 88 T.C. at 669, 676 n.11. Unlike our decision in First Chicago, where the Court reluctantly felt it necessary to do the Secretary's job, the discretionary nature of section 59(g) relieves us of that awkward responsibility. First Chicago Corp. v. Commissioner, 88 T.C. at 669, 671, 676-677.

4. Petitioners Received a Current Tax Benefit from Tax Preference Items

Finally, if the Court were to sanction petitioners' computation of AMTI, petitioners' tax liabilities would approximate the amount of tax that they would have owed had they been able to use the section 29 credits against RIT without regard for the section 29(b)(5) limitation in the first place.

Petitioners, in effect, argue that the ceiling on the section 29 credit is raised for every dollar of credit they have. Petitioners would transpose the express limitation of section 29(b)(5) into a dead letter. It seems unlikely that Congress intended to legislate a limitation so elastic as to be no limitation at all.

As a result of the section 29(b)(5) limitation, petitioners cannot claim that sufficient section 29 credits would have reduced RIT as much as their items of tax preference and that therefore they received no benefit from the latter. In fact, only a small amount of petitioners' credits was allowed in 1988, and none was permitted in 1989 and 1990 against RIT pursuant to section 29(b)(5). See supra pp. 3-4. Thus, petitioners' tax preference items reduced their RIT to an extent that their section 29 credits could not match. This sharply contrasts with the situation in First Chicago Corp., in which the taxpayer's use of foreign tax credits against RIT was not subject to an initial limitation. First Chicago Corp. v. Commissioner, 88 T.C. at 665.

The instant case is also readily distinguishable from Breakell v. Commissioner, 97 T.C. 282, 286-287 (1991), affd. in part, revd. in part and remanded without published opinion 996 F.2d 1231 (11th Cir. 1993), in which this Court held that preference items should be reduced by certain itemized deductions in calculating the taxpayers' AMT. In Breakell, the Court was concerned that if this were not done, the taxpayers would be

subject to the AMT on an amount that "in no way produced a tax benefit." Id. at 287. Furthermore, the taxpayers' net operating loss deduction therein was not eligible to be carried over to a subsequent taxable year. Id. at 284. In contrast, as already discussed, the Days currently benefited from their tax preference items and may also indefinitely carry over liberated section 29 credits to subsequent taxable years due to section 53.

To reflect the foregoing,

Decision will be entered

for respondent.

Appendix

SEC. 29(b)(5).

(b)  Limitations and Adjustments.--

        *    *    *    *    *    *    *

    (5)  Application with other credits.--The credit allowed by subsection (a) for any taxable year shall not exceed the excess (if any) of --

        (A)  the regular tax for the taxable year reduced by the sum of the credits allowable under subpart A and sections 27 and 28, over

        (B)  the tentative minimum tax for the taxable year.

SEC. 53.  CREDIT FOR PRIOR YEAR MINIMUM TAX LIABILITY.

    (a)  Allowance of Credit.--There shall be allowed as a credit against the tax imposed by this chapter for any taxable year an amount equal to the minimum tax credit for such taxable year.

    (b)  Minimum Tax Credit.--For purposes of subsection (a), the minimum tax credit for any taxable year is the excess (if any) of --

        (1)  the adjusted net minimum tax imposed for all prior taxable years beginning after 1986, over

        (2)  the amount allowable as a credit under subsection (a) for such prior taxable years.

    (c)  Limitation.--The credit allowable under subsection (a) for any taxable year shall not exceed the excess (if any) of --

        (1)  The regular tax liability of the taxpayer for such taxable year reduced by the sum of the credits allowable under subparts A, B, D,  E, and F of this part, over

        (2)  the tentative minimum tax for the taxable year.

    (d)  Definitions.--For purposes of this section--

        (1)  Net minimum tax.--

(A) In General.--The term "net minimum tax" means the tax imposed by section 55.

(B) Credit Not Allowed For Exclusion Preferences.--

(i) Adjusted Net Minimum Tax.--The adjusted net minimum tax for any taxable year is--

(I) the amount of the net minimum tax for such taxable year, reduced by

(II) the amount which would be the net minimum tax for such taxable year if the only adjustments and items of tax preference taken into account were those specified in clause (ii) and if section 59(a)(2) did not apply.

(ii) Specified Items.--The following are specified in this clause--

(I) the adjustments provided for in subsection (b)(1) of section 56, and

(II) the items of tax preference described in paragraphs (1), (5), and (7) of section 57(a).

(iii) Special Rule.--The adjusted net minimum tax for the taxable year shall be increased by the amount of the credit not allowed under section 29 (relating to credit for producing fuel from a nonconventional source) solely by reason of the application of section 29(b)(6)(B) or not allowed under section 28 solely by reason of the application of section 28(d)(2)(B), or not allowed under section 30 solely by reason of the application of section30(b)(3)(B).

(iv) Credit Allowable For Exclusion Preferences of Corporations.--In the case of a corporation--

(I) the preceding provisions of this subparagraph shall not apply, and

(II) the adjusted net minimum tax for any taxable year is the amount of the net minimum tax for such year increased by the

amount of any credit not allowed under section 29 solely by reason of the application of section 29(b)(5)(B) or not allowed under section 28 solely by reason of the application of section 28(d)(2)(B).

(2)  Tentative Minimum Tax.--The term "tentative minimum tax" has the meaning given to such term by section 55(b).


SEC. 55.  ALTERNATIVE MINIMUM TAX IMPOSED.

(a)  General Rule.--There is hereby imposed (in addition to any other tax imposed by this subtitle a tax equal to the excess (if any) of--

(1)  the tentative minimum tax for the taxable year, over

(2)  the regular tax for the taxable year.

(b)  Tentative Minimum Tax.--For purposes of this part--

(1)  In general.--The tentative minimum tax  for the taxable year is--

(A)  20 percent (21 percent in the case of a taxpayer other than a corporation) of so much of the alternative minimum taxable income for the taxable year as exceeds the exemption amount, reduced by

(B)  the alternative minimum tax foreign tax credit for the taxable year.

(2)  Alternative Minimum Taxable Income.--The term "alternative minimum taxable income" means the taxable income of the taxpayer for the taxable  year--

(A)  determined with the adjustments provided in section 56 and section 58, and

(B)  increased by the amount of the items of tax preference described in section 57.

If a taxpayer is subject to the regular tax, such taxpayer shall be subject to the tax imposed by this section (and, if the regular tax is determined by reference to an amount other than

taxable income, such amount shall be treated as the taxable income of such taxpayer for purposes of the preceding sentence).

(c)  Regular Tax.--

(1)  In general.--For purposes of this section, the term "regular tax" means the regular tax liability for the taxable year (as defined in section 26(b)) reduced by the foreign tax credit allowable under section 27(a) and the section 936 credit allowable under section 27(b).  Such term shall not include any tax imposed by section 402(e) and shall not include any increase in tax under section 47 or subsection (j) or (k) ofsection 42.

(2)  Cross references.--For provisions providing that certain credits are not allowable against the tax imposed by this section, see sections 26(a), 28(d)(2), 29(b)(5), and 38(c).

(d)  Exemption Amount.--For purposes of this section--

(1)  Exemption amount for taxpayers other than corporations.--In the case of a taxpayer other than a corporation, the term "exemption   amount" means--

(A)  $40,000 in the case of --

(i)  a joint return, or

(ii)  a surviving spouse,

(B)  $30,000 in the case of an individual who--

(i)  is not a married individual, and

(ii)  is not a surviving spouse, and

(C)  $20,000 in the case of--

(i)  a married individual who files a separate return, or

(ii)  an estate or trust.

For purposes of this paragraph, the term "surviving spouse" has the meaning given to such term by section 2(a), and marital status shall be determined under section 7703.

SEC. 57.  ITEMS OF TAX PREFERENCE.

    (a)  General Rule.--For purposes of this part, the items of tax preference determined under this section are--

        (1)  Depletion.-- * * *

        (2)  Intangible drilling costs.-- * * *

        *     *     *     *     *     *     *

        (6)  Appreciated property charitable deduction.