T.C. Memo. 2006-256

UNITED STATES TAX COURT

DANNY HOLLOWAY AND PATTI BAIN HOLLOWAY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20881-04.                    Filed November 28, 2006.

Danny and Patti Bain Holloway, pro sese.

<u>Elke B. Esbjornson</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  Everyone agrees that Danny and Patti
Holloway are entitled to a credit on their 2002 income tax for an
investment in "closed loop biomass projects."  The question is
whether that credit should be the $34,500 they claim or only a
much smaller amount (less than $4,000) that the Commissioner is
willing to allow them after taking into consideration the
alternative minimum tax.

## Background

The Holloways' claim to a tax credit is an indirect one. In 2002, Danny Holloway owned 100 percent of Holloway, Inc., an S Corporation. Holloway, Inc. was in turn a member of a limited liability company named Mopass V. In 2002, Mopass reported a "Section 29 Tax Credit"[1] of $34,500 on the Schedule K-1 that it sent to Holloway, Inc. Holloway, Inc. then reported the credit as an "Enhanced Oil Recovery Credit" under section 43 on the schedule K-1 that it sent to Danny Holloway.[2] The Holloways timely filed their 2002 joint tax return, and claimed not only the full $34,500 credit under section 29 or 43 from Mopass via Holloway, Inc., but also an adoption credit under section 23.

The IRS first sent the Holloways a math error notice, claiming the Holloways miscalculated the amount of their section 29 or 43 credit.[3] Unlike a notice of deficiency, a math error

---

[1] All section references are to the Internal Revenue Code in effect for the 2002 tax year. The Code's sec. on tax credits and the alternative minimum tax are among the most often revised, and the "credit for producing fuel from a nonconventional source" was moved from section 29 to section 45K by the Energy Policy Act of 2005, Pub. L. 109-58, sec. 1322(a)(1), 119 Stat. 594, 1011 (effective Aug. 8, 2005).

[2] The enhanced oil recovery credit is allowed (in 2002 as today) by section 43. Neither party explained how Mopass's section 29 credit metamorphosed into a section 43 credit by the time it reached the Holloways, but as we explain below, the amount of the allowable credit is the same regardless of the section it's claimed under.

[3] The Commissioner sends a math error notice when he finds
(continued...)

notice is not directly appealable to the Tax Court. However, a taxpayer may request an abatement of the increased liability within 60 days, which the Commissioner must grant. If the Commissioner still thinks he was right, he must send a notice of deficiency to the taxpayer. The normal rules for petitioning this Court for redetermination of that deficiency then kick in. See sec. 6213(b)(2).

Instead of demanding an abatement and waiting for a notice of deficiency, the Holloways posted a cash bond and then submitted a written protest requesting a review of the math error notice.[4] While reviewing the protest, the Commissioner looked into the Holloways' adoption credit. Discovering that the Holloways were claiming the credit for Danny Holloway's expenses in adopting his stepchildren--a use specifically disallowed by section 23(d)(1)(C)--the Commissioner sent the Holloways a notice

---

[3](...continued)
there was a "mathematical or clerical error" on a tax return. See sec. 6213(b)(1), (g)(2). The Code's definition of what counts as a math error includes errors in calculating statutory limits on the kind of credits that the Holloways claimed. See sec. 6213(g)(2)(E).

[4] If a taxpayer disagrees with the Commissioner's proposed tax liability but wants to prevent interest from accruing, he may remit all or a portion of the proposed liability (plus interest due) as a deposit in the nature of a cash bond rather than a payment. Rev. Proc. 84-58, 1984-2 C.B. 501. Such a deposit doesn't earn interest, isn't subject to a claim for credit or refund as an overpayment, and must be returned to the taxpayer on request at any time before assessment. Id. sec. 4.02(1), 1984-2 C.B. at 502.

of deficiency disallowing that credit. The Holloways consented to an assessment of the math error change, and their deposit was used to pay it 90 days after the Commissioner sent them the notice of deficiency. See Rev. Proc. 84-58, sec. 4.02(3), 1984-2 C.B. 501, 502. The Holloways responded by timely filing a petition for redetermination of their 2002 tax.

The parties stipulated nearly all the facts in the case, but there was a brief trial in Dallas (though the Holloways were residents of Oklahoma when they filed their petition). After the trial, the Holloways conceded that they were not entitled to the adoption credit.

## Discussion

The Commissioner initially challenged this Court's jurisdiction because the only issue remaining for us to decide is the amount of the Holloways' credit under section 29 or 43, which he had adjusted with a math error notice instead of a notice of deficiency. But, as he now recognizes, once the Holloways properly "petitioned the Tax Court to redetermine the asserted deficiency, the Tax Court acquired jurisdiction to decide the entire gamut of possible issues that controlled the determination of the amount of tax liability for the year in question." Russell v. United States, 592 F.2d 1069, 1072 (9th Cir. 1979); see sec. 6512(a). We therefore agree with the parties that we have jurisdiction.

The heart of this case involves the effect of the alternative minimum tax on the Holloways' tax credit. And because the record is unclear on whether the Holloways are claiming a credit under section 29 or 43, we'll look at both.

We begin with a brief summary of the alternative minimum tax and its relation to either kind of credit. As we explained in Day v. Commissioner, 108 T.C. 11, 14 (1997), the purpose of the alternative minimum tax was to make sure that taxpayers pay some tax regardless of the tax breaks--like the ones in sections 29 and 43--generally available elsewhere in the Code. The alternative minimum tax works by eliminating favorable treatment for some of these breaks.

The starting point in this complicated scheme is calculating a taxpayer's alternative minimum tax income. Alternative minimum tax income begins with regular income tax income, but adjusts it (usually upward) by recalculating or eliminating certain losses, exclusions, and deductions listed in sections 56-58. Sec. 55(b)(2).

The next step is to calculate the "tentative minimum tax." This is done by taking the alternative minimum tax income and subtracting a defined exemption amount,[5] then multiplying the resulting figure by the alternative minimum tax rate and

----

[5] The exemption amount begins to phase out once the alternative minimum tax income reaches a certain threshold amount. Sec. 55(d)(3).

subtracting available foreign tax credits.  Sec. 55(b)(1)(A).

Once the tentative minimum tax is calculated, the third step is to determine the adjusted regular tax[6] for purposes of the alternative minimum tax.  The adjusted regular tax is a taxpayer's regular tax increased by any nonrefundable credits taken, other than foreign tax credits or personal nonrefundable credits.  Sec. 55(c).

This adjusted regular tax is then compared to the tentative minimum tax.  If the tentative minimum tax is larger, any excess over the adjusted regular tax is due as an additional tax for that year.  Sec. 55(a).  If the tentative minimum tax is less, no additional tax is owed but available business credits are limited to the excess of the adjusted regular tax over the tentative minimum tax,[7] with the ability to carry any remaining credits back one year and forward up to twenty years.  Sec. 39.

To summarize,

! Start with a taxpayer's regular income tax income;

! Adjust it by recalculating or eliminating certain losses, exclusions, or deductions;

! Reduce it by an exemption amount;

---

[6] We will refer to the "regular tax" defined in section 55(c) as "adjusted regular tax" to distinguish this term from the "regular tax" defined in section 26(b).

[7] See sec. 38(c)(1).  The actual limitation calculation is much more complex, but for our purposes, this simplified explanation will do.

! Multiply that amount by the alternative minimum tax rate;

! Subtract available foreign tax credits.

Result: a taxpayer's *tentative minimum tax*. Then

! Calculate the regular tax liability;

! Add back in nonrefundable credits (other than foreign tax credits and personal nonrefundable credits);

! Compare the resulting adjusted regular income tax to the tentative minimum tax;

! If the tentative minimum tax is greater than the adjusted regular income tax, then add the difference to the amount of tax due for the year;

! If the adjusted regular income tax is greater than the tentative minimum tax, then limit the amount of business tax credits to the difference and allow any leftover credit to be carried back one year or forward to later years.

As if this weren't complicated enough, there is also something called the "minimum tax credit," which, despite its name, is not a credit against a taxpayer's alternative minimum tax but against his regular income tax. The minimum tax credit is essentially the unused portion of certain deductions, such as depreciation, as calculated under the alternative minimum tax, plus certain other unused credits as defined in the Code. See sec. 53(b), (d)(1). Like the business tax credits above, the minimum tax credit can be used only to the extent that the adjusted regular income tax is greater than the tentative minimum tax. Sec. 53(c). Any unused portion of the minimum tax credit is carried forward to future tax years until it is used up. See sec. 53(b).

The minimum tax credit and the alternative minimum tax limitation on business credits are both applicable to this case because, depending on which credit the Holloways are claiming, one or the other will apply. The section 29 credit (now the section 45K credit) was one of the additional credits included in the minimum tax credit in 2002. Sec. 53(d)(1)(B)(iii). If the Holloways' credit were a section 29 credit, any part of it greater than the excess of their adjusted regular income tax over their tentative minimum tax would become part of their minimum tax credit. Id. If their credit were a section 43 credit, it would be the alternative minimum tax's limits on business credits, as described above, that would apply and limit it.

But whether their credit fed into the minimum tax credit or the general business tax credit part of the whole alternative minimum tax scheme, the Holloways would first have to calculate their tentative minimum tax and adjusted regular income tax for the 2002 tax year to determine how much credit is available to them. It was their failure to do this that caused the Commissioner's computers to spit out a math error notice--and the Holloways do not contest the Commissioner's arithmetic. They concede that without a special rule that reduces their tentative minimum tax, the Commissioner is correct and they are limited in the amount of credit they can take. However, they point to three sections of the Code which they believe apply to their situation:

sections 26(a)(1), 38(c)(4), and 55(e)(1).  Any one of these three sections would, if applicable, allow them the full use of their credit in 2002.

*Section 26(a)(2)*.  This section works by setting the tentative minimum tax as zero in the case of certain credits. This allows the favored credits to offset both regular and alternative minimum tax liability for certain years, including 2002.  But the section applies only to credits "allowed by this subpart."  "This subpart" refers to subpart A of subtitle A, chapter 1, subchapter A, part IV, which lists various credits, but it does not include either section 29 or 43 credits. Recognizing this, the Holloways argue that the phrase "allowed by this subpart" doesn't mean just the credits specifically listed in that subpart, but includes as well <u>other</u> credits that, like the listed credits, are also personal and nonrefundable.  They then argue that their credit became a nonrefundable personal credit when it passed to them through Holloway, Inc.  But simply calling a credit a "nonrefundable personal credit" by analogy doesn't make it allowable under Subtitle A, Chapter 1, Subchapter A, Part IV, Subpart A--the only subpart to which section 26(a)(2) applies.

*Section 38(c)(4)*.  Like section 26(a)(2), this section works by setting the tentative minimum tax as zero in the case of certain credits, essentially allowing them to be used to reduce

the alternative minimum tax. Unfortunately for the Holloways, this section wasn't added to the Code in its present form until 2004, and applies only to tax years ending after October 22, 2004.[8] Even if it were effective for the 2002 tax year, it applies to only certain tax credits, and neither the section 29 nor 43 credit is among them. Sec. 38(c)(4)(B) (2006).

*Section 55(e)(1)*. This section eliminates alternative minimum tax liability for corporations with gross receipts under $7.5 million. But it applies only to corporations subject to taxation. Holloway, Inc. is an S Corporation, and so doesn't pay taxes itself. Its taxable income is also generally calculated as if it were an individual, not a regular corporation. Sec. 1363(a) and (b). This special rule just doesn't apply to it.

We therefore hold that the Commissioner was correct in allowing the Holloways to take only a portion of their credit, and so

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[8] American Jobs Creation Act of 2004, Pub. L. 108-357, sec. 711(a), (c), 118 Stat. 1418, 1557-1558.